805 A.2d 1016

Joseph Jermaine PRINGLE

v.

STATE of Maryland.

No. 129, Sept. Term, 2001.

Court of Appeals of Maryland.

Aug. 27, 2002.

528

Sherrie B. Glasser, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief) Baltimore, for petitioner.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief) Baltimore, for petitioner.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, J.

On April 11, 2000, Joseph Jermaine Pringle, petitioner, was convicted by a jury in the Circuit Court for Baltimore County of possession with intent to distribute cocaine and possession of cocaine. On May 9, 2000, petitioner was sentenced to a term of ten years incarceration without the possibility of parole.[1]

Petitioner appealed this conviction to the Court of Special Appeals. On appeal, petitioner asserted, *inter alia*, that there was no probable cause to support his arrest which led to his conviction. On November 28, 2001, the intermediate appellate court held that there was probable cause to arrest petitioner and affirmed his conviction. *Pringle v. State*, 141 Md.App. 292, 785 A.2d 790 (2001).

On March 6, 2002, we granted petitioner's Petition for Writ of Certiorari. *Pringle v. State*, 368 Md. 239, 792 A.2d 1177 (2002). Petitioner presents one question for our review:

> "Did the police have probable cause to arrest the petitioner where he was a front seat passenger in a vehicle also occupied by the driver/owner and a rear seat passenger, and in which a sum of money was found inside the closed glove compartment and a quantity of drugs was found hidden behind a rear armrest, and where there was neither the odor of drugs within the vehicle nor any other indicia of drug activity?"

We reverse. We hold that there was not probable cause to support the arrest of petitioner in the car when he had not admitted ownership of the drugs. Specifically, we hold that there was not probable cause to arrest petitioner, who was not the owner of the vehicle, when petitioner was merely the front seat passenger and the only evidence supporting the arrest was a sum of money in the closed front glove compartment

---

1. By order dated April 4, 2001, a three-judge panel of the Circuit Court for Baltimore County modified petitioner's sentence. The effect of the modification was a change in petitioner's no-parole sentence to a ten-year sentence with the possibility of parole.

and drugs that were hidden from view in the armrest in the backseat of the vehicle.

## I. Facts

Officer Jeffrey Snyder of the Baltimore County Police Department testified that at 3:16 a.m. on the morning of August 7, 1999, on his routine patrol in the Reisterstown/Garrison area of Baltimore County, he conducted a traffic stop. Officer Snyder asked the driver for his license and registration. The driver/registered owner of the car was Donte Carlos Partlow (Partlow). Also in the vehicle were petitioner, the front seat passenger, and Otis Calvin Smith (Smith), the back seat passenger.

When Partlow opened the glove compartment for the vehicle registration, Officer Snyder saw a large amount of rolled up money in the glove compartment. At this time, Officer Snyder did not ask about the money, but went back to his patrol car with Partlow's license and registration to check the Maryland Motor Vehicle Administration computer system for outstanding violations. The computer check did not reveal any violations and Officer Snyder returned to the car, had Partlow exit the vehicle, and issued him an oral warning.

At this time, a second patrol car arrived and Officer Snyder then "asked him [Partlow] if he had anything in the vehicle, any drugs, weapons, narcotics in the vehicle?" Partlow responded that he did not. Officer Snyder then asked for and received permission from Partlow to search the vehicle. Prior to doing so, Officer Snyder asked the other two men in the vehicle, petitioner and Smith, to exit the vehicle and he patted them down. All three men were asked to sit on the curb while he searched the vehicle.

During the search, Officer Snyder seized $763.00 from the glove compartment and five plastic glassine baggies containing suspected cocaine from inside an armrest in the backseat.[2]

---

**2.** The armrest in the backseat was the type that goes up and down. At the time of the stop, the armrest was in the upright position and flat

Officer Snyder questioned all three men about the ownership of the drugs and money, and told the three men that if no one admitted to ownership of the drugs he was going to arrest them all. None of the men offered any information regarding the ownership of the drugs and/or money, and all three were placed under arrest and transported to the police station.

Sometime between 4:00 and 5:00 a.m., Officer Snyder met with petitioner and, following a waiver of his *Miranda* rights,[3] obtained an oral and written confession in which petitioner acknowledged that the cocaine belonged to him, that he and his friends were going to a party in Westminster, and that he intended to sell it or "Use it for sex." Petitioner maintained that neither Partlow nor Smith knew of the drugs. Partlow and Smith were released.

At trial, during a suppression hearing,[4] petitioner's counsel argued that petitioner's arrest was unlawful because it was not supported by probable cause and that his confession should be suppressed as the unlawful fruit of an illegal arrest. The trial court judge agreed with the State that Officer Snyder "had probable cause to make the arrest." After a jury trial, petitioner was found guilty and sentenced to ten years incarceration without the possibility of parole.[5] The Court of Special Appeals affirmed the conviction.

---

against the seat. When Officer Snyder pulled down the armrest he found the drugs, which had been placed between the armrest and the back seat of the car and, absent the pulling down of the armrest, were not visible.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. It is not altogether clear whether the suppression issue was addressed during the trial itself when the admission into evidence of the confession was sought, or at a separate suppression hearing, or both. Petitioner's brief states "at the hearing on the motion to suppress...." Respondent did not challenge that statement.

5. As stated, *supra*, petitioner's sentence was modified to a ten-year sentence with the possibility of parole.

## II. Discussion

### a. Probable Cause

■ In the case *sub judice*, petitioner is not contending that the vehicle was stopped, or that the vehicle was searched, in violation of the Fourth Amendment's [6] guarantee against unreasonable searches and seizures. Petitioner's only contention is that the police officer did not have probable cause to arrest him; therefore, his confession was the fruit of an illegal arrest.

■ In order for a warrantless arrest to be legal it must be based upon probable cause. We have held that a police officer can arrest an accused without a warrant if the officer has probable cause to believe that a felony has been or is being committed by an alleged offender in the officer's presence. *Woods v. State*, 315 Md. 591, 611–12, 556 A.2d 236, 246 (1989); *Nilson v. State*, 272 Md. 179, 184, 321 A.2d 301, 304 (1974). Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 594B, then stated, in relevant part: [7]

" § 594B. **Arrests without warrants generally.**

(a) *Arrest for crime committed in presence of officer.*—A police officer may arrest without a warrant any person who commits, or attempts to commit, any felony or misdemeanor in the presence of, or within the view of, such officer.

(b) *Arrest for crime apparently committed in presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the officer's presence or within the officer's view, may arrest

---

6. The Fourth Amendment of the United States Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

7. Article 27, section 594B was repealed by Acts of 2001, Chapter 10, section 1, effective October 1, 2001. Present provisions in respect to arrest generally are found in Title 2 and Subtitle 2 of the Criminal Procedure Article.

without a warrant any person whom the officer may reasonably believe to have committed such offense.

(c) *Arrest for crime committed generally.*—A police officer may arrest a person without a warrant if the officer has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in the officer's presence or view."

■ We examined the application of probable cause to a warrantless arrest in *Collins v. State,* 322 Md. 675, 589 A.2d 479 (1991), when we stated:

"Probable cause, we have frequently stated, is a nontechnical conception of a reasonable ground for belief of guilt. *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281 (1988); *Edwardsen v. State,* 243 Md. 131, 136, 220 A.2d 547 (1966). A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion. *Woods, supra,* 315 Md. at 611, 556 A.2d 236; *Sterling v. State,* 248 Md. 240, 245, 235 A.2d 711 (1967); *Edwardsen, supra,* 243 Md. at 136, 220 A.2d 547. Our determination of whether probable cause exists requires a nontechnical, common sense evaluation of the totality of the circumstances in a given situation in light of the facts found to be credible by the trial judge. *State v. Lemmon,* 318 Md. 365, 379, 568 A.2d 48 (1990); *Doering, supra,* 313 Md. at 403–04, 545 A.2d 1281. Probable cause exists where the facts and circumstances taken as a whole would lead a reasonably cautious person to believe that a felony had been or is being committed by the person arrested. *Woods, supra,* 315 Md. at 611, 556 A.2d 236; *Stevenson v. State,* 287 Md. 504, 521, 413 A.2d 1340 (1980); *Duffy v. State,* 243 Md. 425, 432, 221 A.2d 653 (1966). Therefore, to justify a warrantless arrest the police must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion. *Lemmon, supra,* 318 Md. at 380, 568 A.2d 48."

*Id.* at 680, 589 A.2d at 481. To determine whether an officer had probable cause in a specific case, "the reviewing court necessarily must relate the information known to the officer to the elements of the offense that the officer believed was being or had been committed." *DiPino v. Davis*, 354 Md. 18, 32, 729 A.2d 354, 361 (1999).

Petitioner was charged and eventually convicted of violating sections 286—possession of cocaine with intent to distribute—and 287—possession of cocaine.[8] In order for petitioner's arrest to be valid, the officer must have had probable cause at the time of the arrest to believe that petitioner was in possession of cocaine. Possession is defined in Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27, section 277(s) as "the exercise of actual or constructive dominion or control over a thing by one or more persons." This statute recognizes, as we have held, that possession may be constructive or actual, exclusive or joint. *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872, 874 (1983).

While the quantum of evidence is different, we have discussed possession issues in several sufficiency of the evidence cases, which are instructive in respect to the definition of possession. In *Garrison v. State*, 272 Md. 123, 321 A.2d 767 (1974), we examined the meaning of "possession" in reference to section 287 of Article 27.[9] Although we said that the State

8. Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27 §§ 286 and 287.

9. We note that *Garrison* was concerned with the sufficiency of the evidence at trial. In examining probable cause for an arrest, we have stated that "[t]he rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Doering v. State*, 313 Md. 384, 403, 545 A.2d 1281, 1290 (1988). While the State is required to provide more evidence at trial for conviction than for a probable cause showing in respect to arrest at a motion's hearing, the elements of an offense are the same whether a police officer is making a probable cause determination prior to an arrest or whether the State is trying to prove the elements at trial to establish the guilt of a defendant.

was not required to show knowledge by the defendant,[10] we found that in order for the State to establish possession it must establish evidence that "must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited narcotic drug in the sense contemplated by the statute, *i.e.*, that she exercised some restraining or directing influence over it." *Id.* at 142, 321 A.2d at 777. We held that the State had not met the standard of legal sufficiency because there was no evidence which directly or inferentially demonstrated that the defendant had exercised actual or constructive dominion or control, solely or jointly, over the narcotics.

In *State v. Leach,* 296 Md. 591, 463 A.2d 872 (1983), Stephen Leach and his brother, Michael Leach, were convicted of possession of a controlled dangerous substance. On appeal, Stephen Leach challenged the sufficiency of the evidence in his conviction for possession. The essential question was whether Stephen constructively possessed drugs and drug paraphernalia found in Michael's apartment at 3712 Erdman Avenue in Baltimore City. Prior to their arrest, Stephen and Michael had been the objects of ongoing police surveillance. Stephen had been seen entering and leaving the premises at 3712 Erdman Avenue. Relying on information from an informant, the police obtained a search warrant for 3712 Erdman Avenue. On February 27, 1980, the police arrested Michael outside of the premises and then searched the one-bedroom apartment. In the bedroom, police found drugs and drug paraphernalia. Also found in the apartment were an electric bill and a telephone bill, both in Michael's name. A 30–X magnifier and a large table scale were located on the kitchen table. The police then proceeded to the 4000 block of Pourse Avenue, where they arrested Stephen while he was walking a dog. Stephen gave his address as 3712 Erdman Avenue at booking and before a Commissioner. The Department of

---

**10.** This was later overruled by *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988), in which we held that the State must prove that the defendant had knowledge of the controlled dangerous substance to prove possession.

Motor Vehicles had 3712 Erdman Avenue as Stephen's address but his employer had two addresses for Stephen, 3712 Erdman Avenue and 4002 Pourse Avenue. Rita Cushner testified that Stephen lived at 4002 Pourse Avenue with her and her daughter from a few weeks before Thanksgiving in 1979 until late May of 1980.

Finding that the evidence against Stephen was insufficient to establish that he exercised dominion or control over the narcotics, we stated:

"Here the fact finding that Michael was the occupant of the Premises precludes inferring that Stephen had joint dominion and control with Michael over the entire apartment and over everything contained anywhere in it. Even though Stephen had ready access to the apartment, it cannot be reasonably inferred that he exercised restraining or directing influence over PCP in a closed container on the bedroom dresser or over paraphernalia in the bedroom closet. If one assumes that the scales and magnifier found in plain view in the kitchen at the time of the search were always kept there, still those items are intrinsically innocuous. They become significant by association with drugs or cutting agents."

*Id.* at 596, 463 A.2d at 874. We held that the evidence was legally insufficient to convict Stephen.

In *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988), Leonard Dawkins was arrested in a hotel room and charged with possession of heroin and possession of controlled paraphernalia. At trial, after the presentation of evidence, the court instructed the jury on the elements of possession. Dawkins requested that the court instruct the jury that knowledge is an element of possession; the court declined. We reversed, holding that knowledge is an element of possession. Judge Eldridge, writing for the Court, stated:

"Under the Maryland statute, § 277(s) defines 'possession' as 'the exercise of actual or constructive *dominion or control* over a thing by one or more persons.' (Emphasis added). Some courts, in analyzing similar language, con-

strue 'dominion and control' to require 'knowledge.' For example, in *State v. Burns*, 457 S.W.2d 721 (Mo.1970), the Missouri Supreme Court determined that 'possession' included a knowledge element. It reasoned that in order to 'control' an object, the defendant must know of its existence. The court stated: 'Knowledge of the existence of the object is essential to physical control thereof with the intent to exercise such control and such knowledge must necessarily precede the intent to exercise or the exercise of such control.' 457 S.W.2d at 724.

"We find persuasive the reasoning of the above-reviewed cases. In particular, we agree that an individual ordinarily would not be deemed to exercise 'dominion or control' over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control."

*Id.* at 648–49, 547 A.2d at 1046 (footnote omitted).

■ Therefore, in order to prove "possession," the State must prove the elements of "dominion or control" and "knowledge." These elements were applied in two other, more recent, sufficiency of the evidence cases, *White v. State*, 363 Md. 150, 767 A.2d 855 (2001) and *Taylor v. State*, 346 Md. 452, 697 A.2d 462 (1997). In *White*, Sean White was a passenger in a vehicle that was stopped by a Maryland State trooper for a traffic offense. After conducting a pat-down of the driver, on whom the state trooper discovered marijuana, the state trooper searched the vehicle. In the trunk of the vehicle, in a sealed box containing pots and pans, the state trooper discovered 194 grams of cocaine. Both the driver/owner of the vehicle and White were arrested at that time. Among other charges, White was charged with possession of cocaine and possession of cocaine with intent to distribute. White was convicted and his conviction was affirmed by the Court of Special Appeals.

Before this Court, White contended that there was not sufficient evidence to support his conviction for possession of

the cocaine found in the box of pots and pans located in the trunk. Writing for the Court, Judge Harrell stated:

"There is a substantial question whether the evidence in this case establishes beyond a reasonable doubt that Petitioner [White] had knowledge of the presence of the cocaine hidden in a sealed box of pots and pans found inside the trunk of Charity's vehicle. Although Petitioner, by virtue of being a passenger in Charity's vehicle, was in close proximity to the cocaine, on this record *he did not have a possessory right in, or control over, the vehicle.* Additionally, Charity's behavior, when contrasted with Petitioner's, is distinguishable. Charity, who arguably knew that 194 grams of cocaine were in the trunk of his automobile, was so nervous that Lewis [the state trooper] claimed he could see Charity's carotid artery pulsing in his neck and his heart pounding through his shirt. No such dramatic observations, however, were attributed to Petitioner, who claims ignorance as to the existence of the contraband. Although Lewis did state that Petitioner would not look at him during questioning, his compatriot, Corporal Bromwell, noted nothing unusual about Petitioner's behavior, and testified that Petitioner remained quiet or engaged in small talk while Lewis searched Charity's vehicle.

"Assuming *arguendo* that there was evidence in the record sufficient to establish beyond a reasonable doubt the knowledge requirement for possession, we conclude nonetheless that there was not sufficient evidence establishing that Petitioner exercised dominion and control over the cocaine. . . .

. . .

"After reviewing the record in White's case in a light most favorable to the State, we hold the circumstantial evidence upon which the State's case rested was insufficient as a matter of law to support, beyond a reasonable doubt, that Petitioner exercised dominion or control over the cocaine found inside the pots and pans box in the trunk of Charity's automobile. If the rational fact finder was not

permitted to infer reasonably in *Leach* [*supra*] that Stephen exercised dominion and control over the PCP found in a closed container on a bedroom dresser in an apartment to which he had ready access, than *a rational fact finder may not infer in the present case that Petitioner had dominion and control over the cocaine found in a sealed box in the trunk of a vehicle in which he apparently had limited access and no possessory interest.* Having no such interest in the vehicle places Petitioner in a somewhat similar situation to that of the defendant in *Livingston* [*v. State,* 317 Md. 408, 564 A.2d 414 (1989)], for the mere existence of cocaine located in the trunk of Charity's vehicle was not sufficient to prove that Petitioner, a front seat passenger, exercised dominion and control over the contraband. Although Lewis's testimony regarding the air fresheners and the codefendants's inconsistent stories might form the basis for a strong suspicion as to Petitioner's culpability, the evidence, and reasonable inferences drawn therefrom, does not reach the standard of guilt beyond a reasonable doubt. Without more, we hold that the Petitioner's convictions for importation of cocaine, possession of cocaine, and possession of cocaine with the intent to distribute cannot stand."

*White,* 363 Md. at 164–67, 767 A.2d at 863–64 (footnote omitted) (some emphasis added).

In *Taylor,* the Ocean City police entered a motel room after receiving a complaint about a possible controlled dangerous substance violation. Upon entering the room, Richard Taylor, petitioner before this Court, was lying on the floor with his face away from the door.[11] The police received permission to search the room for "dope," and the police discovered a bag of marijuana in two different bags, neither belonging to Taylor, and rolling papers in the wallet of one of the other occupants of the room. Taylor was charged with possession of marijuana and he was convicted.

---

11. The police testified that they did not know whether Taylor was sleeping or awake.

After reviewing the sufficiency of the evidence, we held that the evidence was insufficient to establish possession. Judge Raker, writing for the Court, stated:

"We agree with Taylor that, under the facts of this case, any finding that he was in possession of the marijuana could be based on no more than speculation or conjecture. The State conceded at trial that no marijuana or paraphernalia was found on Petitioner or in his personal belongings, nor did the officers observe Petitioner or any of the other occupants of the hotel room smoking marijuana. Viewing the evidence in the light most favorable to the State, Officer Bernal's testimony established only that Taylor was present in a room where marijuana had been smoked recently, that he was aware that it had been smoked, and that Taylor was in proximity to contraband that was concealed in a container belonging to another.

"The record is clear that Petitioner was not in exclusive possession of the premises, and that the contraband was secreted in a hidden place not otherwise shown to be within Petitioner's control.... Possession requires more than being in the presence of other persons having possession; it requires the exercise of dominion or control over the thing allegedly possessed....

"... The evidence in this case does not establish that Taylor had knowledge of the presence of the marijuana concealed in Myers's carrying bags.

"As clearly indicated by *Dawkins*, without knowledge of the presence of marijuana in the room, it is not possible for Petitioner to have exercised dominion or control over the marijuana, another required ingredient of the crime of possession. The facts and circumstances, considered in the light most favorable to the State, do not justify any reasonable inference that Petitioner had the ability to exercise, or in fact did exercise dominion or control over the contraband found in the room. Although the evidence in this case might form the basis for a strong suspicion of Petitioner's guilt, suspicion is insufficient to support a conviction. '[M]ere proximity to the drug, mere presence on the proper-

ty where it is located, or mere association, without more, with the person who does control the drug or property on which it is found, is insufficient to support a finding of possession.' *Murray v. United States,* 403 F.2d 694, 696 (9th Cir.1969) (internal quotation marks and citations omitted). In other words, there must be additional proof of knowledge and control to sustain a conviction for possession.

. . .

"In sum, the evidence presented in this case was insufficient to establish that Taylor was in possession of the marijuana seized from Myers's carrying bags. Taylor's presence in a room in which marijuana had been smoked, and his awareness that marijuana had been smoked, cannot permit a rational trier of fact to infer that Taylor exercised a restraining or directing influence over marijuana that was concealed in personal carrying bags of another occupant of the room. Because Petitioner was in joint rather than exclusive possession of the hotel room, his mere proximity to the contraband found concealed in a travel bag and his presence in a room containing marijuana smoke were insufficient to convict him."

*Taylor,* 346 Md. at 459–63, 697 A.2d at 465–68 (footnote omitted) (alteration in original).

While the cases we have discussed above involve the sufficiency of the evidence, they, nonetheless, establish the law for determining some possession issues, even at the probable cause to arrest stage. Moreover, we have also had occasion to apply the elements of possession to cases, like the case at bar, where the probable cause to make an arrest for possession is being challenged. In *Livingston v. State,* 317 Md. 408, 564 A.2d 414 (1989), Wesley Livingston was one of three people in a vehicle that was stopped for speeding. Livingston, who was not the owner of the vehicle, was sitting in the backseat. During the stop for speeding, the state trooper saw two marijuana seeds on the floor of the front passenger's side. The state trooper arrested all three occupants of the car and upon searching Livingston pursuant to the arrest, the state

trooper discovered cocaine and marijuana in Livingston's pocket. Livingston was charged with possession of cocaine with intent to distribute, possession of cocaine, and possession of marijuana. He moved to suppress the evidence as the product of an illegal arrest but the motion was denied by the trial court. Livingston was convicted on all three counts and he appealed.

While we found that the two marijuana seeds on the floor provided the state trooper with probable cause that a misdemeanor was being committed in his presence, the question became who could the state trooper arrest for the offense. We held that the two marijuana seeds on the floor in the front of the vehicle did not provide the state trooper with probable cause to arrest Livingston and then conduct a search incident to that arrest. We stated:

"Merely sitting in the backseat of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car.

"Without more than the mere existence of two marijuana seeds located in the front of the car, we hold that the police officer lacked probable cause to arrest Livingston, a rear seat passenger, for possession of marijuana. Thus, Livingston's arrest was illegal, and the contraband seized in the search arising out of that arrest must be suppressed."

*Id.* at 415–16, 564 A.2d at 418 (footnote omitted).

We further examined when a police officer has probable cause to make a warrantless arrest in *Collins v. State*, 322 Md. 675, 589 A.2d 479 (1991). On September 20, 1988, at 3:00 a.m., Officer Holmes of the Salisbury Police Department noticed five men standing about five feet from a Mustang that was parked in the entrance to a car dealership. The Mustang was not owned by Collins. Officer Holmes approached the men and asked what they were doing. The driver of the Mustang, Steven Lewis, stated that they were looking at the BMWs. Officer Ewing arrived on the scene to assist Officer Holmes.

Officer Ewing saw a 35 mm film canister on the rear seat of the Mustang and he asked one of the men to retrieve the canister for him. Inside the canister, Officer Ewing found over twenty cellophane wrapped packets containing cocaine. Officers Ewing and Holmes then arrested all five men for possession of cocaine. Collins alleged at a suppression hearing that there was not probable cause for his arrest. The trial court denied his suppression motion and Collins was convicted of possession of cocaine.

Before this Court, Collins once again asserted that there was not probable cause for his arrest. Specifically, relying on *Livingston, supra,* he asserted that his mere proximity to incriminating evidence, or to an offender, is not enough for a finding of probable cause for arrest. Furthermore, Collins asserted that there was no further factual basis to connect him to the drugs or to having committed any crime. We first discussed the United States Supreme Court case of *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), in which the Supreme Court had examined the arrest of Di Re, who was seated in the passenger seat of a vehicle from which an informant had purchased counterfeit gasoline ration coupons from the driver and the backseat passenger was seen holding gasoline ration coupons. The police arrested and searched all three men. The Supreme Court held that Di Re's mere presence in a vehicle involved in criminal activity, without more, did not cause him to lose his right to be free from a search of his person. We then discussed our holding in *Livingston, supra,* and we held that there was not probable cause to arrest Collins for possession. We stated:

"Considering the totality of the circumstances, we conclude that the mere presence of a closed film canister in a car found to contain cocaine was legally insufficient to support the requisite probable cause to arrest Collins as he stood outside of the vehicle. No testimony suggested that he arrived at the lot in the car, that he had even been in the vehicle, or that he knew the suspected cocaine was in the back seat of the car. Even if the police had probable cause to arrest Lewis or Parker for unlawful possession, there was

no probable cause to arrest Collins. As there was no evidence which criminally linked Collins to either the car, or to the film canister, there was no probable cause to believe that he committed or attempted to commit a felony as required by Art. 27, § 594B."

*Collins,* 322 Md. at 682–83, 589 A.2d at 482.

■ As stated, *supra,* to determine whether a police officer had probable cause to make a warrantless arrest, we evaluate the totality of the circumstances as to whether the facts and circumstances, with rational inferences derived therefrom, would lead a reasonable person to believe that a felony has been or is being committed. In a specific case, we apply the elements of the alleged offense to the facts and circumstances of that case to determine whether the police officer had probable cause to make a warrantless arrest of a particular individual for that specific offense.

■ In the case *sub judice,* applying the facts and circumstances of this case to the elements of possession requiring "knowledge" of the controlled dangerous substance and "dominion or control" over the substance, and relying on the holdings of our previous cases, specifically our holding in *Livingston,* we find that the police did not have probable cause to arrest petitioner. Similar to the situation in *Livingston,* where the defendant was sitting in the backseat and two marijuana seeds were in open view on the floor in the front seat, petitioner in this case was sitting in the front seat and the cocaine was found hidden from view in the armrest in the back seat of the car. Without additional facts available to the officer at that time that would tend to establish petitioner's knowledge and dominion or control over the drugs, the mere finding of cocaine in the back armrest when petitioner was a front seat passenger in a car being driven by its owner is insufficient to establish probable cause for an arrest for possession.[12] As we stated in Livingston:

---

12. Under respondent's reasoning, if contraband was found in a twelve-passenger van, or perhaps a bus or other kind of vehicle, or even a

"Merely sitting in the backseat of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car.

"Without more than the mere existence of two marijuana seeds located in the front of the car, we hold that the police officer lacked probable cause to arrest Livingston, a rear seat passenger, for possession of marijuana."

*Livingston,* 317 Md. at 415–16, 564 A.2d at 418 (footnote omitted).

The State points to the additional fact that the police officer saw a large amount of rolled up money in the glove compartment located in front of petitioner. Money, without more, is innocuous. In *Leach,* we held that there was insufficient evidence to convict Stephen Leach, the brother of Michael Leach, when the drugs were found in Michael Leach's bedroom. In that case, the police had also discovered a large table scale and a magnifier in plain view on the kitchen table. We held that the table scale and magnifier were intrinsically innocuous and that they only became significant when associated with drugs. The money in the case at bar was not in the plain view of the police officer or petitioner; rather it was located in a closed glove compartment and only came into view when the glove compartment was opened by the car's owner/driver in response to the officer's request for the car's registration. There are insufficient facts that would lead a reasonable person to believe that *petitioner,* at the time of his arrest, had prior knowledge of the money or had exercised any dominion or control over it. We hold that a police officer's discovery of money in a closed glove compartment and cocaine concealed behind the rear armrest of a car is insufficient to establish probable cause for an arrest of a front seat passen-

---

place, *i.e.,* a movie theater, the police would be permitted to place everyone in such a vehicle or place under arrest until some person confessed to being in possession of the contraband. Simply stated, a policy of arresting everyone until somebody confesses is constitutionally unacceptable.

ger, who is not the owner or person in control of the vehicle, for possession of the cocaine.

 As noted, *supra,* we hold that there was not probable cause to arrest petitioner at the time of the routine traffic stop. Under the "fruit of the poisonous tree doctrine," [13] evidence tainted by Fourth Amendment violations may not be used directly or indirectly against the accused. *See Miles v. State,* 365 Md. 488, 781 A.2d 787 (2001). The exclusionary rule "applies to any 'fruits' of a constitutional violation— whether such evidence be tangible ... or confessions or statements of the accused obtained during an illegal arrest and detention." *United States v. Crews,* 445 U.S. 463, 470, 100 S.Ct. 1244, 1249, 63 L.Ed.2d 537, 545 (1980) (footnote omitted).

### b. Attenuation

The State has not argued that the confession was admissible as a result of attenuation. We do not believe that the parties have properly presented that issue to this Court. Even if properly presented, the concept would not be applicable under the circumstances here present.

 In that respect, we turn now to whether, if attenuation had been properly presented, the taint of the illegal arrest was sufficiently attenuated to permit the admission into evidence of petitioner's confession, which would otherwise be barred as the fruit of a poisonous tree because the arrest was effectuated without probable cause. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

In her dissenting opinion in *Miles,* Judge Raker, examining the attenuation doctrine, stated:

---

13. The "fruit of the poisonous tree" doctrine is an aspect of the exclusionary rule, a judicially imposed sanction for violations of the Fourth Amendment right against improper arrests and unreasonable searches and seizures in prosecutions, and requires courts to suppress evidence that is the product of unlawful governmental activity. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Ferguson v. State,* 301 Md. 542, 483 A.2d 1255 (1984).

"It is black letter law that once a defendant has demonstrated the existence of a primary illegality [14] ... the burden shifts to the government to prove that the resulting evidence was not derived from that illegality....

"The government can demonstrate that the taint of the primary illegality has been purged in three ways: (1) by demonstrating that the causal nexus between the illegality and the subsequently discovered evidence is sufficiently attenuated so that the taint has been dissipated, *see Wong Sun,* 371 U.S. at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d 441, (2) by demonstrating that the subsequently discovered evidence was obtained from a source independent of the primary illegality, *see United States v. Wade,* 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967); or (3) by demonstrating that, absent the illegality, the State still inevitably would have discovered the later evidence. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).... [15]

. . .

"In examining the *Wong Sun* attenuation doctrine, courts repeatedly utilize consequential language, such as 'exploitation,' 'direct result,' 'chain of events,' 'link,' 'nexus,' 'impetus,' 'connection,' 'causation,' 'inducement,' 'basis,' and 'product' to describe the necessary relationship between a primary illegality and evidence derived therefrom. In assessing attenuation, courts examine the facts and circumstances of each case in considering four factors: the giving of *Miranda* warnings; the temporal proximity of the illegality to the confession; the presence of intervening circumstances; and the purpose and flagrancy of the illegal police conduct. *See*

---

14. In the case at bar, the warrantless arrest was effectuated without probable cause.

15. The doctrines of independent source and inevitable discovery, two additional ways for the government to demonstrate that the taint of the primary illegality has been purged, have not been raised in this case.

*Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)." [16]

*Miles,* 365 Md. at 575–78, 781 A.2d at 837–39 (some citations omitted) (footnote omitted). In the case *sub judice,* we hold that there was no attenuation between petitioner's arrest and his confession that would sufficiently purge the taint of the illegal arrest.

▮ The giving of the *Miranda* warnings, the first of the *Brown* factors, does not, alone, attenuate the taint of an illegal arrest.[17] Nor does the *Brown* temporal proximity attenuator provide a clear-cut test for determining at what point the taint has been purged by the lapse of time. In *Ferguson v. State,* 301 Md. at 550, 483 A.2d at 1259 (1984), this Court stated:

"[T]he Supreme Court has understandably not articulated any mathematically precise test for determining at what point the taint has been purged by the lapse of time. Recent decisions, however, indicate that time spans ranging from two hours to six hours between an unlawful arrest and the challenged evidence constitute insufficient attenuation. Because a lengthy detention can be used to exploit an illegal arrest at least as easily as a brief detention, the temporal proximity factor has been labeled 'ambiguous' . . . ." [Citations omitted.]

In the case *sub judice,* even though petitioner was given and waived his *Miranda* rights prior to his confession, he, nonetheless, confessed in the station house just over two hours after the illegal arrest. As stated, *supra,* while the timing of the confession is not dispositive as to the issue of attenuation, the mere two-hour passage of time, during which petitioner

---

**16.** We adopted the test for attenuation, as set forth in *Brown,* in *Ferguson v. State,* 301 Md. 542, 549, 483 A.2d 1255, 1258 (1984). In *Scott v. State,* 366 Md. 121, 149, 782 A.2d 862, 878 (2001), we stated that, "No one factor is dispositive."

**17.** In *Brown,* 422 U.S. at 603, 95 S.Ct. at 2261, 45 L.Ed.2d at 427, the Supreme Court held the receiving of *Miranda* warnings to be an important factor in assessing the voluntariness of a confession, but also stated that a defendant's waiver of *Miranda* rights alone to be insufficient to purge the taint of a defendant's illegal arrest.

remained in custody, does not establish attenuation. In this case, the traffic stop occurred at approximately 3:00 a.m., the arrest shortly thereafter, and the three men were transported to the station house. It was not long after the arrival at the station house, after his illegal arrest, that petitioner was placed in a room, questioned, and confessed. The time between the illegal arrest and the confession is the natural time that likely would have lapsed in such a situation. The fact that petitioner confessed approximately two hours after the police officer at the scene stated that he was going to arrest all three passengers unless one confessed to being in possession of the contraband, and then established that he meant what he said by arresting all of them, does not, as the majority for the Court of Special Appeals urges, "generat[e] an issue of attenuation." In this case, where the officer had initially established a coercive effect by stating that he was going to arrest all three unless one confessed and had indeed arrested all of them when there was no initial confession, this two-hour time span constitutes insufficient attenuation and the fact that petitioner received and waived his *Miranda* warnings prior to his confession does not amount to attenuation. The coercion began alongside the highway at the point of arrest, and by its very nature continued to the point of the custodial confession.[18]

 In these circumstances, there was no meaningful intervening circumstance, the next *Brown* factor to consider, that prompted petitioner to confess to the police.[19] Clearly, it

---

18. When the officer stated that he was going to arrest all three unless one confessed, and then did so, the coercion continued, unbroken, from the point of the illegal arrest during the entire period when all three persons remained under arrest.

19. "[A]n intervening circumstance is an event that breaks the causal connection between the unlawful conduct and the derivative evidence. Properly considered, the focus should more appropriately be on the accused to determine whether there was any event that contributed to his ability to consider carefully and objectively his options and to exercise his free will." *Ferguson*, 301 Md. at 551, 483 A.2d at 1259 (citing *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982)) (holding that six hours between the unlawful arrest and chal-

was the officer's arrest of all three men, specifically petitioner's illegal arrest, that induced and directly led to petitioner's confession. The record shows that petitioner was arrested, transported, and questioned. The time it took to transport petitioner to the station house, and the time petitioner remained there prior to being questioned does not dissipate the taint of the illegal arrest or constitute an intervening circumstance. The circumstance, the arresting of all three persons and keeping them under arrest until one of them confessed, was a continuing coercive factor. There was never an intervening circumstance. Petitioner's confession flowed directly from the illegal arrest and, moreover, was made during the continuation of that illegal arrest and its coercive effect. There was no intervening event; there was, instead, a continuation of the illegal event.

The final factor under *Brown*, the purpose and flagrancy of the illegal police conduct, here the officer's arrest without probable cause and transportation of petitioner to the station house, further supports a lack of attenuation. "This factor effectuates the deterrence policy of the exclusionary rule by providing an incentive for police to engage in lawful conduct. Obvious examples of purposeful and flagrant conduct are dragnet operations and pretextual arrests." *Ferguson*, 301 Md. at 552, 483 A.2d at 1260 (citations omitted). In the case *sub judice*, the apparent purpose of arresting all three men was to exploit their situation by transporting them to the station house where, perhaps, one of the men would be prepared to confess in order to clear the other persons arrested. That is, in fact, what occurred. Officer Snyder stated that he would arrest all three men unless someone confessed; he then arrested all three men, including petition-

---

lenged evidence constituted insufficient attenuation and that there was no intervening circumstance present when the accused was visited by his girlfriend and a male companion after the unlawful arrest but before the confession). *But cf. Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (intervening circumstance was present when after an unlawful arrest but prior to a lineup identification, a magistrate committed the accused and conducted the lineup).

er, whom he had no probable cause to arrest, and exploited the situation, *i.e.*, holding all three men in custody to generate a confession. This final *Brown* factor argues against any attenuation in the case *sub judice.*

The purpose of the Fourth Amendment exclusionary rule is to deter unlawful police conduct [20] and that purpose would be violated if we were to allow law enforcement officers to effectuate an illegal arrest and admit into evidence a confession from the person illegally arrested. "Maryland law demands that confessions 'be shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.'" *Reynolds v. State*, 327 Md. 494, 504, 610 A.2d 782, 786 (1992) (quoting *Hillard v. State*, 286 Md. 145, 150, 406 A.2d 415, 418 (1979)). Emphasizing the deterrent purposes of the exclusionary rule further supports another *Brown* factor, discussed in a subsequent Supreme Court case, and our holding that unlawful police conduct, like the conduct in the case *sub judice*, should not be rewarded by admitting evidence derived from that improper police conduct.

In *Miles, supra,* Judge Battaglia, writing for this Court noted that, "The United States Supreme Court further refined its analysis of the attenuation doctrine set forth in *Brown v. Illinois,* to include an exploration of voluntariness. *See United States v. Ceccolini,* 435 U.S. 268, 276–77, 98 S.Ct. 1054,

---

**20.** In *Ferguson,* 301 Md. at 548, 483 A.2d at 1258, we discussed the deterrent effect of the exclusionary rule:

"This standard reflects a deterrence-based policy, which is '[t]he core rationale consistently advanced ... for extending the Exclusionary Rule to evidence that is the fruit of unlawful police conduct....' *Nix v. Williams,* 467 U.S. [431, 442], 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377, 386–87 (1984). Despite the high societal costs in allowing persons obviously guilty to go unpunished for their crimes ... the Court in *Wong Sun* reasoned that suppression was the appropriate remedy so as to deter police from exploiting their illegal conduct." [Citations omitted.] [Alteration in original.]

*See also United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

1060, 55 L.Ed.2d 268, 277 (1978)." [21] *Miles*, 365 Md. at 523, 781 A.2d at 807. The Court of Special Appeals found petitioner's confession to be voluntary because he waived his *Miranda* rights and then made a written and oral confession more than two hours after the police officer stated that if none of the three men claimed ownership of the drugs and/or money he was going to arrest all of them, and then did so. The intermediate appellate court found petitioner's statement to be voluntary under Maryland law, the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and Article 22 of the Maryland Declaration of Rights, and held that the police officer's statement that "you are all going to get arrested" did not amount to an inducement for petitioner's subsequent confession. Furthermore, the Court of Special Appeals concluded that, "Appellant's transfer from the crime scene to the police station also disrupted the nexus between the alleged inducement and confession," and that the time lapse between the arrest and the confession show that there was attenuation and voluntariness on the part of petitioner to confess. We disagree.

Petitioner's confession was, to reiterate, the product of his illegal arrest and the improper and continuing coercion arising from that illegal arrest that existed up until the point of the confession. Any element of voluntariness evidenced by petitioner's waiver of his *Miranda* rights and subsequent confession does not, ultimately, dissipate the taint of the illegal arrest and the continuing improper coercion. The temporal proximity of the illegal arrest, along with the police officer's statement, which effect continued, does not attenuate, via the confession, the taint of the illegal arrest. In examining the

---

**21.** *Ceccolini*, which involved the voluntary aspect of a witness's testimony as a break in the chain of taint flowing from the unlawful conduct stands for the proposition that a person's action in providing evidence or testimony should be considered as an intervening factor under the attenuation doctrine because a person has the "attributes of will, perception, memory and volition." *Ceccolini*, 435 U.S. at 277, 98 S.Ct. at 1060, 55 L.Ed.2d at 277 (quoting *Smith v. United States*, 324 F.2d 879, 881 (D.C.Cir.1963)). Thus, we consider, along with the *Brown* factors, the voluntariness of petitioner's confession.

facts and circumstances of this case under the *Brown* factors, petitioner's confession at such a proximate time to the illegal arrest, and while the improper coercive influence continued, without more facts does not support attenuation and, therefore, the confession was the fruit of an illegal arrest.

## III. Conclusion

In order for the warrantless arrest of petitioner for possession to be legal, there must be probable cause as applicable to the elements of the offense of possession. Looking at the totality of the circumstances, and after examining our case law, we conclude that there was not probable cause to arrest petitioner for possession.

The totality of the circumstances of the facts of this case, as interpreted under the *Brown* factors and the further consideration of voluntariness, clearly show that the necessary severing of the relationship between the primary illegality and the evidence derived therefrom to satisfy attenuation, even if the issue had been properly presented to this Court, does not exist. While petitioner was given his *Miranda* warnings, an application of the remaining *Brown* factors and a consideration of voluntariness, in light of the continuing inducement and the confession's proximity in time to the illegal arrest and the coercion, makes clear that the temporal proximity between the illegal arrest and the confession, the lack of intervening circumstances and the purposefulness of the illegal police conduct all indicate a direct causal nexus between the illegal arrest for lack of probable cause and petitioner's confession used by the State at trial.

Therefore, we hold that the arrest of petitioner was illegal and that there were insufficient facts and circumstances to prove petitioner's confession was adequately attenuated from the point of his illegal arrest to the giving of the confession.

**JUDGMENT REVERSED; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.**

RAKER, J., concurs.

WILNER, HARRELL, and BATTAGLIA, JJ., dissent.

RAKER, J., concurring:

I concur in the Court's opinion and in the judgment. Like Judge Cathell, writing for the Court, and Judge Sonner, dissenting in the Court of Special Appeals, *Pringle v. State,* 141 Md.App. 292, 785 A.2d 790 (2001), I am convinced that the police lacked probable cause to arrest petitioner.[1] I write separately to express my view that the dissent misconstrues the rationale of the majority opinion.

Contrary to the repeated assertion by the dissent that the majority erroneously blends the probable cause standard with the sufficiency of evidence standard, the Court is well aware of the basic and elemental difference in the quantum of proof to support probable cause and that which is necessary to support a conviction. The majority reiterates and applies the well-recognized standard for probable cause: "A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion." Maj. op. at 533–35 (quoting *Collins v. State,* 322 Md. 675, 680, 589 A.2d 479, 481 (1991)). Probable cause, a nontechnical common sense evaluation of the totality of the circumstances, nonetheless requires a reasonable ground for belief of guilt. In order to find probable cause for possession of a controlled dangerous substance, an arresting officer must have reasonable grounds to believe that a suspect knowingly exercised dominion or control over the substance. The majority merely looks to this Court's jurisprudence as guidance to elucidate the concept of possession and its discussion of dominion or control. The standard for probable cause, on the one hand, and sufficiency of the evidence, on the other, remains unchanged.

---

1. I agree also with the Court's conclusion that the confession was the product of an illegal arrest. *See Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975).

Apparently, proximity to concealed drugs is sufficient for the dissent to find probable cause to arrest. *See* Diss. op. at 558, 559 n. 3. Although it may be sufficient under certain circumstances, the discovery of three men riding in a car in the early morning hours, with some rolled money in a closed glove box and drugs hidden from view in a back arm rest, without more, hardly constitutes probable cause to arrest a front seat passenger who has no possessory interest in the automobile.

I cannot improve upon Judge Sonner's analysis in his dissent below:

> Mindful of *Garrison* and its progeny, I believe the majority has stopped far short of considering whether Pringle, in any way, knowingly exercised dominion or control over the secreted contraband, and has resorted instead to "speculation or conjecture." Although Pringle, like Folk, may have been within an arm's reach of the drugs, in fact, to expose the drugs, he would have had to stretch his body, maneuver around the back of his seat, and pull down the arm rest. And unlike Folk, Pringle was not sitting in a closed car that emanated the pungent, easily detectable smell of marijuana, which were critical facts in Judge Moylan's analysis sustaining Folk's conviction thirty years ago. Although the majority [of the Court of Special Appeals] attaches some significance to the large roll of currency found in the glove compartment, located in front of Pringle's seat, cash, in and of itself, is innocuous and certainly less suspicious than the scales and cutting tools discounted by the Court of Appeals in *Leach*. Further, there was no showing whatsoever that Pringle, as a passenger in the car, had any connection to, or knowledge of, the money found within the glove compartment of someone else's car.

*Pringle v. State,* 141 Md.App. at 316, 785 A.2d at 804 (internal citations omitted).

BATTAGLIA, J. in which WILNER and HARRELL, JJ., join.

I respectfully dissent.

The majority's holding that the police officers lacked probable cause to arrest the petitioner for possession of cocaine is based primarily upon an erroneous blending of the probable cause standard for an arrest and the sufficiency of evidence standard for a conviction. While the majority hastily acknowledges the differences between these standards, *see* maj. op. at fn. 9, it devotes most of its attention to citing and discussing legal authority for issues involving the standard of legal sufficiency and gives only brief consideration to two (more applicable, albeit distinguishable) opinions concerning the requisite probable cause for a valid warrantless arrest. For these reasons, and the reasons articulated herein, I respectfully dissent.

Arrests without warrants are constitutionally and statutorily permitted pursuant to Article 27, Section 594B of the Maryland Code as long as the officer has probable cause to believe that a crime has been committed and the officer reasonably believes the arrestee committed that crime.[1] Determining whether probable cause exists to support a warrantless arrest requires a nontechnical, common sense evaluation of the totality of the circumstances in a given situation "in light of the facts and circumstances found to be credible by the trial judge." *See State v. Lemmon,* 318 Md. 365, 379, 568 A.2d 48, 55 (1990). The police must have "specific and articulable facts which, taken together with rational inferences from those

---

**1.** Maryland Code (1957, 1996 Repl.Vol.), Article 27, Section 594B, now found at Section 2–202 of the Criminal Procedure Article, states:

(a) *Arrest for crime committed in presence of police officer.*—A police officer may arrest without a warrant any person who commits or attempts to commit any felony or misdemeanor in the presence of, or within the view of, such police officer.

(b) *Arrest for crime apparently committed in presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the police officer may reasonably believe to have committed the crime.

(c) *Arrest from crime committed generally.*—A police officer may arrest a person without a warrant if the officer has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in the officer's presence or view.

facts, reasonably warranted the intrusion." *Id.* at 380, 568 A.2d at 56. It is this "totality of the circumstances" test under which a probable cause determination is properly reviewed.

In the present case, the information known to the officer at the time of the arrest was that three men were traveling in a vehicle (a Nissan Maxima) around 3:00am with a large stash of cash in the glove compartment and several plastic baggies of cocaine in the rear armrest. None of the men claimed ownership of the drugs or money, yet the location of the drugs and money in the Nissan Maxima would lead a reasonable officer in similar circumstances to believe that the three men had joint constructive possession over the contraband. In my view, this establishes probable cause for the arrest of each of the three individuals, including the petitioner.

What more would the majority require to justify an arrest? From the emphasis in its opinion, the majority would seemingly require police officers to consider whether the evidence gathered would be legally sufficient for a possession conviction *prior* to making the arrest. The majority asserts that "[w]hile the cases we have discussed above involve the sufficiency of the evidence, they, nonetheless, establish the law for determining some possession issues, even at the probable cause to arrest stage;" yet *cites no authority* for this proposition. Granted, the arresting officer must comprehend that which "possession of a controlled dangerous substance" entails.[2] The officer should not, however, be required to base a determination to arrest on the ability of the State to meet the standard of legal sufficiency for a conviction; nor should the reviewing courts measure the propriety of the arrest by such a standard.[3]

---

2. Possession is defined as "the exercise of actual or constructive dominion or control over a thing by one or more persons." *See* Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27, section 277(s).

3. The majority opinion discusses several cases involving the standard of legal sufficiency for possession. *See* maj. op. pp. 533–544. (discussing, in order, *Garrison v. State,* 272 Md. 123, 321 A.2d 767 (1974), which held that the State did not meet the standard of legal sufficiency for

Let me be clear on this point: I agree that the legal sufficiency of evidence in possession of narcotics cases requires the State to produce evidence of dominion or control over the narcotic allegedly possessed, and knowledge therewith, *see Moye v. State,* 369 Md. 2, 14, 796 A.2d 821, 828 (2002)(citing *Dawkins v. State,* 313 Md. 638, 649, 547 A.2d 1041, 1046 (1988)), beyond a reasonable doubt. I disagree, however, that the degree of evidence required for a conviction on the charge of possession of narcotics can be equated to that which is required of police officers when making probable cause determinations for warrantless arrests. Courts reviewing such determinations must not confuse or blend the two standards: probable cause for an arrest (a lower standard than legal sufficiency for a conviction) requires the *reasonable belief* that the person arrested had committed or was committing the felony crime of possession of narcotics. As we have oft explained, "probable cause is a nontechnical conception of a

---

possession of narcotics because there was no evidence to demonstrate actual or constructive dominion or control over the drugs; *State v. Leach,* 296 Md. 591, 463 A.2d 872 (1983), which held that there existed insufficient evidence to establish constructive possession over the narcotics; *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988), where the Court held that knowledge is an element of possession of narcotics which the State must establish and the court must so instruct the jury; *White v. State,* 363 Md. 150, 767 A.2d 855 (2001), which held that there existed insufficient evidence to establish beyond a reasonable doubt that the petitioner had knowledge of the presence of cocaine hidden in driver's trunk; and *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997), which held that insufficient evidence existed to establish possession of marijuana because there was no evidence that petitioner exercised dominion or control over marijuana or had knowledge of its presence).

With respect to the legal sufficiency of evidence, it is true that "[m]ere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or property on which it is found, *is insufficient to support a finding of possession." Moye, v. State,* 369 Md. 2, 16, 796 A.2d 821, 829 (2002)(emphasis added)(quoting *Taylor v. State,* 346 Md. 452, 460, 697 A.2d 462, 466 (1997)). "There must be additional proof of knowledge and control to sustain a conviction for possession." *Taylor,* 346 Md. at 460, 697 A.2d at 466. Depending on the surrounding circumstances, proximity to the drug or association with the persons or property on which illegal narcotics are found, however, may be sufficient to support probable cause to justify a warrantless arrest.

reasonable ground for belief of guilt, requiring less evidence for such belief than would justify a conviction, but more evidence than that which would arouse a mere suspicion." *Woods v. State*, 315 Md. 591, 611, 556 A.2d 236, 246 (1989)(quoting *Nilson v. State*, 272 Md. 179, 184, 321 A.2d 301, 304 (1974)). A police officer who discovers (at 3 a.m.) three passengers in a vehicle which contained several baggies of cocaine in the rear armrest and a large wad of money (arguably, "drug money") in the front glove compartment could reasonably believe that those persons were exercising joint and constructive possession of the contraband in the vehicle, were engaging in drug trafficking, or conspiring to engage in drug trafficking, thus establishing probable cause for the arrest of each individual. Whether the State's Attorney can produce sufficient evidence to demonstrate, beyond a reasonable doubt, actual or constructive dominion or control over the narcotics and knowledge therein to warrant a conviction is another question—one that is properly left to the prosecutor, initially, and the trier of fact, subsequently.[4]

Notwithstanding the majority's inappropriate emphasis on cases involving the sufficiency of evidence, the majority does cite two cases which, while arguably more on-point, are factually distinguishable. In *Livingston v. State*, 317 Md. 408, 564 A.2d 414 (1989), a state trooper stopped a vehicle for speeding; when the officer spotted two marijuana seeds on the floor of the front passenger side, he arrested all three people in a vehicle. Because Livingston was sitting in the backseat of the vehicle and could not have reasonably manifested dominion or control over the two seeds located on the front passenger side floor, we held that the state trooper could not have probable cause to arrest Livingston for the crime. We stated specifical-

---

4. Article 10, Section 34 of the Maryland Code grants prosecutors the authority to "prosecute ... all cases in which the State may be interested." Md.Code (1957, Repl.Vol.), Art. 10, § 34. Maryland State's Attorneys are entrusted with broad discretion to "institute and prosecute criminal causes." *Beverly v. State*, 349 Md. 106, 121, 707 A.2d 91, 98 (1998)(quoting *Brack v. Wells*, 184 Md. 86, 90, 40 A.2d 319, 321 (1944)).

ly that "[w]ithout more than the mere existence of two mari-
juana seeds located in the front of the car, we hold that the
police officer lacked probable cause to arrest Livingston, a
rear seat passenger, for possession of marijuana." Id. at 416,
564 A.2d at 418 (emphasis added). In the case sub judice, the
police officer had more evidence than "the mere existence of
two marijuana seeds"—he had several baggies of cocaine in
the rear armrest and a large wad of money in the glove
compartment. It strains credulity to analogize the mere
existence of two seeds on the floor of a vehicle to the secreted
wad of cash and baggies of cocaine discovered in the present
case. That two seeds on the front passenger floor of a vehicle
is not enough to establish probable cause to arrest the back
seat passenger does not, in my mind, equate to a lack of
probable cause when a police officer discovers several baggies
of cocaine and a large amount of cash.

Similarly, the facts which led to a finding of lack of probable
cause in Collins v. State, 322 Md. 675, 589 A.2d 479 (1991), are
markedly different than those before us today. In Collins,
police officers observed five men standing approximately five
feet from a Mustang in which a 35 mm film canister containing
cocaine was ultimately found. Id. at 677, 589 A.2d at 480.
The officers arrested all five men for possession of cocaine.
Id. at 678, 589 A.2d at 480. We held that "[c]onsidering the
totality of the circumstances, ... the mere presence of a
closed film canister in a car found to contain cocaine [did not]
support the requisite probable cause to arrest Collins as he
stood outside of the vehicle. No testimony suggested that he
arrived at the lot in the car, that he had even been in the
vehicle, or that he knew the suspected cocaine was in the back
seat of the car." Id. at 682–83, 589 A.2d at 482 (emphasis
added). In the present case, Pringle was not only physically
in the car, he was seated in proximity to the cocaine and the
money, items about which it was reasonable to believe that
Pringle could have had knowledge of or control over. Evalu-
ating the totality of the circumstances, with consideration of
the facts as presented to the officer and rational inferences
derived therefrom, I believe that probable cause existed to
justify the officer's warrantless arrest of Pringle.

Instead of focusing on the factual scenario presented to the Court, and more apposite, to the police officer, the majority chooses to jump to hypothetical extremes in an attempt to justify its operative heightening of the probable cause standard. In note 12, the majority erroneously asserts that if the Court were to adopt the position proffered by the appellant, then so long as some contraband was found, probable cause would exist, *per se,* and the police could arrest *everyone,* whether in a twelve-passenger van or movie theater. Such an assertion is specious in that the totality of the circumstances test, itself, precludes these sweeping generalizations; instead, it requires a review of the *specific* facts and circumstances presented to the officer at the scene of the purported crime, and if questioned, a ruling regarding the officer's determination based upon these specific facts and circumstances. A court should not, and quite simply cannot, conjecture upon whether probable cause exists in factual situations not before it. Should I choose to entertain the majority's hypotheticals, however, I would unequivocally assert that baggies of cocaine found in one area of a packed movie theater, *without more,* would not constitute probable cause to arrest *everyone* in the theater; I believe that the totality of circumstances test, itself, would preclude a finding of validity in such circumstances.

The majority's attempt, however discrete, to incorporate a higher standard—that of the sufficiency of evidence-into the properly-applied probable cause standard will only serve to burden the law enforcement community. The majority apparently hopes to create prosecutors out of police officers by forcing law enforcement officers to guarantee the sufficiency of evidence for conviction on the crime of possession prior to initiating a viable arrest. Just as the standards are different, so are the duties of those who apply them. In the simplest of terms, police officers assist in enforcing the laws by arresting suspected violators, prosecutors assist in enforcing the laws by attempting to secure State-mandated punishment for these violations by presenting evidence which demonstrates, beyond a reasonable doubt, that the accused violated the law.

Certainly police officers must act in accordance with constitutional and statutory policies and procedures, but forcing officers to base their arrests of suspected wrong-doers upon whether a conviction may stand is unacceptable. *See Woods,* 315 Md. at 611, 556 A.2d at 246 (explaining that "whether an arrest for a felony without a warrant is constitutionally valid necessarily turns upon whether, at the moment the arrest was made, the arresting officer or the police acting as a team had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing a felony")(quoting *Nilson,* 272 Md. at 184, 321 A.2d at 304). Again, the decision to *charge* a wrong-doer is within the discretionary purview of the prosecutors, and the decision to *convict,* with the trier of fact. Sufficiency of evidence for conviction may have similar analytical markings with probable cause for arrest, but the two are not synonymous.

In *Wilkes v. State,* 364 Md. 554, 774 A.2d 420 (2001), we quoted the United States Supreme Court's apt explanation of the conception of probable cause:

In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

\* \* \*

Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating ... often opposing interests. Re-

quiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*Id.* at 584–85, 774 A.2d at 438 (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890–91 (1949)); *accord Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281, 1290–91 (1988). Again, I fear that the majority's holding today will, in effect, "unduly hamper law enforcement" in this State. Probable cause, a concept of probabilities, requires only that "the facts and circumstances within the officer's knowledge ... justify the belief of a reasonable person that a crime has been or is being committed" and that the person arrested participated in the crime. *Johnson v. State,* 356 Md. 498, 504, 740 A.2d 615, 618 (1999). The practical considerations on which the officer acted in the case *sub judice* were reasonable in light of the evidence discovered. I would affirm the holding of the Court of Special Appeals; the circumstances were sufficient to constitute probable cause to arrest the appellant.

Given that I would find sufficient probable cause to arrest the appellant, the issue of attenuation would be immaterial. The majority's conclusion regarding lack of probable cause, however, provides the occasion to address the issue of attenuation, in view of the fact the petitioner confessed. The occasion to address the attenuation issue must be exercised by the trial court in the first instance, rather than an appellate court, because questions of this nature are necessarily "fact-specific." *See United States v. Burton,* 288 F.3d 91, 100 (3d Cir.2002).

I would be remiss, however, if I neglected to comment upon the flawed attenuation analysis proffered by the majority in this case. First, while I agree that "an individual's waiver of Miranda warnings taken alone would be insufficient to purge the taint of the original unlawful conduct under a Fourth Amendment analysis," a person's voluntary conduct and demonstration of free will may "purge the primary taint" associated with the unlawful conduct. *See Miles v. State,* 365 Md. 488, 526, 781 A.2d 787, 809 (2001)(quoting *Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 426 (1975)).

As we noted in *Miles,* the Supreme Court refined the attenuation doctrine to include an exploration into the voluntariness of an accused's conduct. *See id.* at 523, 781 A.2d at 807 (citing *United States v. Ceccolini,* 435 U.S. 268, 276–77, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268, 277 (1978)). Substantively speaking, I agree with the analysis of the Court of Special Appeals concerning the voluntariness of the appellant's confession and the lack of coercion on the part of the police officers. The statement by the police on which the majority solely relies in finding "coercion" is "you are all going to get arrested." [5] As the Court of Special Appeals correctly stated, "[t]his statement flowed naturally from the attendant circumstances of finding three suspects within the proximity of the illegal drugs." *Pringle,* 141 Md.App. at 308, 785 A.2d at 799. Informing the suspects that they were going to be arrested is not a statement that would be considered exploitative, threatening, or made in an attempt to induce a confession; it was a statement of fact concerning the actions the officer was about to take. With respect to the subsequent confession, the majority failed to consider the voluntariness of the petitioner's conduct, a factor not only independently mandated by the *Ceccolini* decision, but one that may be construed as an intervening factor under *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427 (1975).[6] In-

---

5. The majority fails to acknowledge that there was a factual dispute regarding the subsequent part of the alleged statement made by the police officer. The petitioner alleges that prior to the arrests, the officer indicated that if one person would confess the others would be let go. The officer denies making such a statement. Regardless of whether the statement occurred, the Court of Special Appeals correctly points out that it could not have had the inducing or coercing effect that the petitioner alleges because the petitioner did not confess in response to this statement in order to ensure that his friends would not be arrested. All three men were, in fact, taken into custody; appellant's confession occurred more than two hours after the arrest. Appellant's allegation "that he confessed so that his friends would go free is inconsistent with the sequence of events." *Pringle v. State,* 141 Md. App. 292, 309, 785 A.2d 790, 800 (2001).

6. I further disagree with the majority's application of the temporal factor of attenuation analysis and the weight it affords that factor

stead, it simply excused the confession as a "product of his illegal arrest and the . . . continuing coercion arising from that illegal arrest" without any consideration or deliberation upon the voluntariness of petitioner's conduct. *See*, maj. op. at 554.

For the aforementioned reasons, I respectfully dissent.

Judge WILNER and Judge HARRELL have authorized me to state that they join in the views expressed herein.

thereto. As we stated in *Miles*, there exists no specific length of time by which the taint of unlawful conduct will be purged. *Miles*, 365 Md. at 527–28, 781 A.2d at 810. The majority, on the one hand, acknowledges that "a lengthy detention can be used to exploit an illegal arrest at least as easily as a brief detention"and thus, the temporal factor is "ambiguous," *see* maj. op. at 550 (quoting *Ferguson v. State*, 301 Md. 542, 550, 483 A.2d 1255, 1259 (1984)); on the other hand, however, the majority seems to indicate that if·"[t]he time between the illegal arrest and the confession is the natural time that likely would have lapsed in such a situation," then the temporal factor should automatically weigh against the State. *See* maj. op. at 550. I disagree with any implication that the "natural lapse of time" should be a decisive standard in evaluating attenuation. The temporal factor cannot be considered in a vacuum; surrounding facts and circumstances must also be considered.