564 A.2d 414

**Wesley Warren LIVINGSTON**

v.

**STATE of Maryland.**

**No. 108, Sept. Term, 1988.**

Court of Appeals of Maryland.

Oct. 11, 1989.

Gary S. Bernstein (William H. Murphy, Jr., both on brief), Baltimore, for petitioner.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

This criminal case grows out of two marijuana seeds. The important constitutional issue presented is whether, under the circumstances of this case, a police officer has probable cause to arrest and search a backseat passenger after observing two marijuana seeds located on the front floor of an automobile. We conclude that relying solely on their proximity, an officer does not possess sufficient cause to believe that a backseat passenger has dominion and control over two marijuana seeds on the front floor of a car.

Petitioner, Wesley Warren Livingston ("Livingston"), was one of three occupants of an automobile speeding southbound on I–95, in Cecil County, Maryland. The car was stopped shortly after midnight by State Trooper Lawrence Nelson ("Nelson"). Livingston, who was not the owner of the vehicle, was seated in the backseat. Notwithstanding the darkness of the hour, the trooper, with the aid of his 30,000 candlepower flashlight, managed to discern two marijuana seeds located on the right front floorboard of the car. Nelson arrested each of the car's occupants for possession of the seeds. During a search incident to the arrests, Nelson discovered cocaine and marijuana in Petitioner's pocket.

Livingston was indicted for possession of cocaine with intent to distribute, possession of cocaine, and possession of marijuana. He moved to suppress the evidence claiming it was the product of an illegal arrest. The Circuit Court for Cecil County denied the motion.

Livingston was convicted on all three counts and then sentenced to three years. On appeal, the Court of Special

Appeals, in a per curiam opinion, affirmed the trial court's judgment. We reverse, and shall explain.

As we recently discussed in *Malcolm v. State*,[1] 314 Md. 221, 226 n. 5, 550 A.2d 670, 672 n. 5 (1988), the Fourth Amendment of the U.S. Constitution guarantees the "right of the people to be secure in their persons...." *See* U.S. Const. amend. IV.[2] It is now axiomatic that Article 26 of Maryland's Declaration of Rights is *in pari materia* with the Fourth Amendment.[3] *E.g., Trusty v. State*, 308 Md. 658, 661 n. 2, 521 A.2d 749, 750 n. 2 (1987); *Potts v. State*, 300 Md. 567, 576, 479 A.2d 1335, 1340 (1984); *Gahan v. State*, 290 Md. 310, 319, 430 A.2d 49, 54 (1981).

The result of these protections is that a police officer is generally required to obtain a search warrant to conduct a valid search of an individual. Nevertheless, there are exceptions to this requirement, such as when the search of an individual is incident to a lawful arrest. *Colvin v. State*, 299 Md. 88, 98, 472 A.2d 953, 958, *cert. denied*, 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984).

In *Colvin*, we applied the Supreme Court's reasoning in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), which stated:

---

**1.** In *Malcolm,* we discussed the warrantless search of an automobile based on an informant's tip. Here we discuss the search of a passenger in an automobile arising out of his warrantless arrest.

**2.** The Fourth Amendment states in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,...." U.S. Const. amend. IV. This provision applies to the states through the Fourteenth Amendment. *Colorado v. Bannister,* 449 U.S. 1, 3, 101 S.Ct. 42, 43, 66 L.Ed.2d 1, 4 (1980). *See also Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

**3.** Art. 26 provides:
That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [grievous] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but it is also a 'reasonable search' under that amendment.

*Colvin* [299 Md.] at 97–98, 472 A.2d at 957–58, citing *United States v. Robinson,* 414 U.S. at 235, 94 S.Ct. at 477.

Clearly then, a reasonable search under such circumstances is predicated upon a prior lawful arrest. Conversely, if the prior arrest is unlawful, the subsequent search and seizure—necessarily derived from it—are also unlawful. *Trusty v. State,* 308 Md. 658, 661 n. 2, 521 A.2d 749, 750 n. 2 (1987); *Stanley v. State,* 230 Md. 188, 192, 186 A.2d 478, 481 (1962).

Thus it follows that if Livingston's arrest is found to be invalid, so too must the search of his person. Because the Fourth Amendment bars the use of evidence obtained through illegal search and seizure,[4] the cocaine and marijuana seized from Livingston's pocket must then be suppressed and the convictions reversed. The issue becomes whether Livingston's arrest for possession of the marijuana seeds was lawful.

In *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984), the Supreme Court held that "the usual traffic stop is more analogous to a so-called 'Terry stop,' ... than to a formal arrest." *Id.,* citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Patterson,* 691 F.Supp. 908, 912 (D.Md.1987). *Accord, Pennsylvania v. Bruder,* 488

---

**4.** *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). *See also, Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

U.S. ——, ——, 109 S.Ct. 205, 206, 102 L.Ed.2d 172, 176 (1988). Therefore, stopping a vehicle for a speeding violation and detaining its occupants does not constitute a custodial arrest. *Colorado v. Bannister*, 449 U.S. 1, 3, 101 S.Ct. 42, 43, 66 L.Ed.2d 1, 4 (1980). Yet such a stop does constitute a "seizure" within the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979). Thus, it must be reasonable. *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.

Committed in the trooper's presence, the speeding violation constituted a valid reason for stopping the vehicle. More importantly, it served as a valid basis for a visual intrusion into the automobile. *Bannister*, 449 U.S. at 4, 101 S.Ct. at 43, 66 L.Ed.2d at 4.

The plain view doctrine "serves to supplement a previously justified intrusion, ... and permits a warrantless seizure." *State v. Wilson*, 279 Md. 189, 194, 367 A.2d 1223, 1227 (1977). Therefore, when the police (1) have a prior justification for their intrusion; (2) inadvertently discover evidence which is in plain view; and (3) immediately perceive that what they have discovered is evidence, they are permitted to seize that evidence.[5] *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2039–40, 29 L.Ed.2d 564, 584–86 (1971). *See Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 355 (1987); *Wiggins v. State*, 315 Md. 232, 250–52, 554 A.2d 356, 364–65 (1989); *Liichow v. State*, 288 Md. 502, 513, 419 A.2d 1041, 1047 (1980); *State v. Wilson*, 279 Md. 189, 195, 367 A.2d 1223 (1977).

The trooper's use of a flashlight to look into the car did not preclude a plain view discovery, for it is generally accepted that,

> [T]he use of a flashlight or similar artificial illumination has been most readily upheld when it has permitted an

---

**5.** This last condition has been interpreted as a requirement for "probable cause." *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 355 (1987).

officer to see objects inside a vehicle. When the vehicle was parked or was lawfully stopped on the public way, the courts have consistently held that the officer's conduct in illuminating the interior of the automobile does not constitute a search.

1 W.R. LaFave, *Search and Seizure* § 2.2(b), at 329 (2d. ed. 1987).[6]

Thus, having validly stopped the car and promptly spotted the seeds in the beam of his flashlight, the trooper had probable cause to believe that a misdemeanor—possession of marijuana—was being committed in his presence. But which of the vehicle's occupants was committing the misdemeanor?

In *Davids v. State*, 208 Md. 377, 118 A.2d 636 (1955), we held that:

An officer without a warrant should not make an arrest for a misdemeanor unless ... the circumstances are such that they would justify a person of ordinary prudence in believing that the suspected person is committing a misdemeanor.

*Id.* at 384, 118 A.2d at 638. In other words, there must be some factual basis to believe that a suspect is a participant in the misdemeanor before he may be arrested. *Id.* Here, the presence of two seeds on the floor in the front of the car, without more, is insufficient to inculpate Livingston, a rear seat passenger, for possession of marijuana.

---

**6.** *See United States v. Lara,* 517 F.2d 209 (5th Cir.1975); *United States v. Johnson,* 506 F.2d 674 (8th Cir.1974); *United States v. Lewis,* 504 F.2d 92 (6th Cir.1974); *United States v. Hood,* 493 F.2d 677 (9th Cir.1974); *State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973); *People v. Henry,* 631 P.2d 1122 (Colo.1981); *State v. Graham,* 200 Conn. 9, 509 A.2d 493 (1986); *Redd v. State,* 240 Ga. 753, 243 S.E.2d 16 (1978); *State v. Post,* 98 Idaho 834, 573 P.2d 153 (1978); *People v. Bombacino,* 51 Ill.2d 17, 280 N.E.2d 697 (1972); *State v. Lamp,* 322 N.W.2d 48 (Iowa 1982); *State v. Brown,* 370 So.2d 525 (La.1979); *Commonwealth v. Sergienko,* 399 Mass. 291, 503 N.E.2d 1282 (1987); *State v. Chattley,* 390 A.2d 472 (Me.1978); *People v. Whalen,* 390 Mich. 672, 213 N.W.2d 116 (1973); *State v. Alesso,* 328 N.W.2d 685 (Minn.1982); *State v. Renfrew,* 122 N.H. 308, 444 A.2d 527 (1982); *Commonwealth v. Milyak,* 508 Pa. 2, 493 A.2d 1346 (1985).

The case of *State v. Leach*, 296 Md. 591, 463 A.2d 872 (1983), is helpful in interpreting the possession statute under which Livingston was arrested.[7]   In *Leach*, two brothers, Michael and Stephen Leach, were arrested for possession of phencyclidine (PCP). The PCP was found in a bedroom in an apartment owned and occupied by Michael. Stephen Leach possessed a key to the apartment and had given the apartment number as his address both to the arresting officer, and previously, to the Motor Vehicle Administration when registering his motorcycle.

Although finding that Michael was the sole owner and occupier of the apartment, the trial court held that both Stephen and Michael were guilty of possession of PCP. *Id.* at 595, 463 A.2d at 874. The court based its decision on the fact that the PCP was located in, and both brothers had access to, the apartment. *Id.*

We reversed, holding that:

'Possession' means 'the exercise of actual or constructive dominion or control over a thing by one or more persons.' Art. 27, § 277(s). The statute recognizes, as we held in *Henson v. State*, 236 Md. 518, 525, 204 A.2d 516, 520 (1964), that possession may be constructive. Possession may also be joint. *See Garrison v. State*, 272 Md. 123, 128, 321 A.2d 767, 770 (1974); *Rucker v. State*, 196 Md. 334, 340, 76 A.2d 572, 574 (1950).

---

7.   Livingston was arrested for possession of marijuana under Md.Code (1957, 1987 Repl.Vol., 1988 Cum.Supp.), Art. 27, § 287. As defined in the possession statute:

'Marijuana' means all parts of any plant of the genus Cannabis, whether growing or not; *the seeds thereof;* the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the mature stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination. [Emphasis added.]
Md.Code (1957, 1987 Repl.Vol., 1988 Cum.Supp.), Art. 27, § 277(*o*).

But the 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it.' *Garrison, supra,* 272 Md. at 142, 321 A.2d at 777.

*Id.* at 595–96, 463 A.2d at 874, (discussing the definition of possession contained in Art. 27, § 277(s)).

Though he had access to the apartment, Stephen Leach did not exhibit a restraining or directing influence over contraband located in a closed container in the bedroom dresser, nor in paraphernalia in the bedroom closet. *Id.* at 596, 463 A.2d at 874. As a result, he could not be inculpated for its possession.

Writing for the court, Judge Eldridge further explained the statute in *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988):

[A]n individual ordinarily would not be deemed to exercise 'dominion or control' over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control.

*Id.* at 649, 547 A.2d at 1046.

The same logic applies to Livingston. Merely sitting in the backseat of the vehicle,[8] Livingston did not demonstrate to the officer that he possessed any knowledge of, and

---

8. Our reasoning is consistent with the factually similar case of *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). In *Di Re,* as here, there were three occupants in a car. The rear seat passenger was visibly holding counterfeit gas ration coupons he claimed he received from the driver. The passenger to the right of the driver, Di Re, did no more than sit in the car. *Id.* In dictum discussing the search of occupants of a car suspected of carrying contraband, the Supreme Court stated that it was "not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Id.* at 587, 68 S.Ct. at 225, 92 L.Ed. at 216.

hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car.

Without more than the mere existence of two marijuana seeds located in the front of the car, we hold that the police officer lacked probable cause to arrest Livingston, a rear seat passenger, for possession of marijuana. Thus, Livingston's arrest was illegal, and the contraband seized in the search arising out of that arrest must be suppressed. Accordingly, the convictions must be reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED.

CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CECIL COUNTY.