842 A.2d 716

**STATE of Maryland**

v.

**Robert Eric SUDDITH.**

**No. 39, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 12, 2004.

Glenn F. Ivey, State's Attorney and Special Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland; Gary E. Bair, Solicitor General; Michelle W. Cole, Staff Attorney, all on brief), Baltimore, for petitioners.

Mark Colvin, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

CATHELL, Judge.

On March 5 and 6, 2002, Robert Eric Suddith, respondent, was tried by a jury in the Circuit Court for Prince George's County and was convicted of possession of heroin, possession of cocaine and possession of drug paraphernalia. On April 24, 2002, the trial judge sentenced respondent to four years of incarceration for the possession of heroin conviction and a concurrent sentence of four years of incarceration for the possession of cocaine conviction. The trial court additionally noted that "based on the jury's conviction of possession of paraphernalia, the sentence is suspended generally on that count." [1]

---

1. We do not address the meaning of "suspended generally" as it was not an issue presented to this Court.

Respondent filed an appeal to the Court of Special Appeals. On April 1, 2003, in an unreported opinion, the Court of Special Appeals reversed the trial court's rulings. The Court of Special Appeals held, based in part on our decision in *Pringle v. State*, 370 Md. 525, 805 A.2d 1016 (2002), "that the mere presence in a vehicle of drugs and paraphernalia, without more, is insufficient to establish a nexus between the passenger, the drugs, and the paraphernalia." The intermediate appellate court went on to state that the evidence was insufficient to support the inferences that respondent either exercised control over the contraband or knew that the contraband was in the vehicle.

Petitioner then filed a Petition for Writ of Certiorari to this Court and on June 19, 2003, this Court granted the petition. *State v. Suddith*, 376 Md. 49, 827 A.2d 112 (2003). In its brief, the State presents one question for our review:

"Did the Court of Special Appeals incorrectly hold that the evidence was insufficient to sustain the conviction of a passenger of a stolen vehicle for possession of heroin, possession of cocaine, and possession of drug paraphernalia, where the drugs and a large quantity of items associated with drug use were strewn throughout the vehicle as a result of the vehicle's flipping three times following the driver's loss of control while fleeing from police?"

We answer petitioner's question in the affirmative and reverse the opinion of the Court of Special Appeals. We hold that the jury's inferences from the evidence presented were reasonable and thus sufficient to sustain respondent's convictions for possession of heroin, cocaine and drug paraphernalia.

## I. Facts

At approximately 8:40 p.m. on October 18, 2001, Fred Rosario, an officer with the District of Columbia's Metropolitan Police Department, observed a Ford Explorer being driven with its headlights off and he attempted to stop the vehicle. At this time, the Explorer fled the scene, which initiated a high-speed pursuit by the police. During the chase, Officer Rosario recognized that the Explorer matched the description

of a sports utility vehicle that recently had been carjacked and reported stolen. The high-speed chase was recorded by a video camera located within Officer Rosario's police cruiser. The Explorer fled through the streets of the District of Columbia and into Maryland, where the chase concluded after the driver of the Explorer lost control of the vehicle and it flipped over three times before stopping.

The officers on the scene of the crash apprehended four persons from the Explorer, including respondent, the driver and two other passengers.[2] As none of the four occupants of the Explorer claimed ownership of the vehicle and the vehicle was confirmed as stolen, all four were arrested for the theft of the Explorer. The Explorer was then searched incident to the arrest of its occupants. The following items were discovered strewn about in the interior passenger compartment of the stolen Explorer: eleven green bags containing heroin; one green bag containing crack cocaine; nine bags containing a white powdery residue; three clear bags containing drug paraphernalia; one box of cigarette rolling papers; two empty green bags; one marijuana pipe; several metal bottle caps; one used roll of aluminum foil; nine bottles of clear liquid; twenty-five syringes; and four bottles of bleach. After being read their *Miranda* rights, all of the occupants denied knowledge of the drugs and who was the driver of the vehicle. A search incident to arrest of respondent revealed that respondent was carrying $220 in cash.[3] While drugs were found scattered throughout the vehicle, no drugs were found on respondent's person. Testimony of Trooper Barrett elicited that all of the above-mentioned items recovered were commonly used in the drug trade. A forensic chemist for the State identified the substance found in the eleven green bags as heroin and the substance within the individual green bag as

---

**2.** The record reflects that Maryland State Trooper Barrett identified Andrew Harding as the driver of the Explorer and respondent as one of the three passengers.

**3.** The denominations of that cash were a single one hundred dollar bill, two fifty dollar bills and one twenty dollar bill.

cocaine. To conserve resources, several of the items with residue were not analyzed for possible drug content.

At trial, respondent moved for a judgment of acquittal based, *inter alia,* on an argument that the State did not meet its "burden of proof beyond a reasonable doubt" that respondent knew of or possessed the contraband. The trial court, in response, stated:

> "Well, I think the issues that you raised are fact driven and must be determined by the fact finder. So as to a matter of law, I would deny the defense motion for judgment of acquittal at the close of all of the evidence, finding that the issue is—one of the issues raised by the defense are issues of fact that must be determined by the fact finder."

The jury found respondent guilty on the charges of possession of heroin, possession of cocaine and possession of drug paraphernalia.

## II. Standard of Review

The standard of review for an appellate court's review of the sufficiency of evidence to sustain a conviction was summarized recently by this Court in the case of *State v. Smith,* 374 Md. 527, 533–34, 823 A.2d 664, 668 (2003), when we said:

> "The standard for appellate review of evidentiary sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560, 569 (1979); *Moye v. State,* 369 Md. 2, 12, 796 A.2d 821, 827 (2002); *White v. State,* 363 Md. 150, 162, 767 A.2d 855, 861–62 (2001); *State v. Albrecht,* 336 Md. 475, 478–79, 649 A.2d 336, 337–38 (1994). 'Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder.' *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998). *See McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675, 685–86 (1997), *cert. denied,* 522 U.S. 1151, 118

S.Ct. 1173, 140 L.Ed.2d 182 (1998) (quoting *Albrecht,* 336 Md. at 478, 649 A.2d at 337); *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037, 1040–41 (1991); *Wright v. State,* 312 Md. 648, 541 A.2d 988 (1988). 'We give "due regard to the [fact finder's] findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." ' *Moye,* 369 Md. at 12, 796 A.2d at 827 (quoting *McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675, 685 (1997) (quoting *Albrecht,* 336 Md. at 478, 649 A.2d at 337)). *See* the following recent cases quoting *Albrecht: Anderson v. State,* 372 Md. 285, 291–92, 812 A.2d 1016, 1020 (2002); *Deese v. State,* 367 Md. 293, 305, 786 A.2d 751, 758 (2001); *Galloway v. State,* 365 Md. 599, 649, 781 A.2d 851, 880 (2001); *White,* 363 Md. at 162, 767 A.2d at 861–62. We do not re-weigh the evidence, but 'we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt.' *White,* 363 Md. at 162, 767 A.2d at 862. A valid conviction may be based solely on circumstantial evidence. *Wilson v. State,* 319 Md. 530, 537, 573 A.2d 831, 834 (1990). The same standard applies to all criminal cases, including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts."

A trial court fact-finder, *i.e.,* judge or jury, possesses the ability to "choose among differing inferences that might possibly be made from a factual situation" and this Court must give deference to all reasonable inferences the fact-finder draws, regardless of whether we would have chosen a different reasonable inference. *Id.* at 534, 823 A.2d at 668.[4] *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61

---

**4.** In *Smith,* we thoroughly discussed the law, both in Maryland and in several other jurisdictions, regarding a trier of fact's inferences and that of appellate courts' deference to those inferences. *Id.* at 534–44, 823 A.2d at 668–74.

L.Ed.2d 560, 573 (1979) (stating that the trier of fact has the responsibility "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"); *Jones v. State*, 343 Md. 448, 460, 682 A.2d 248, 254 (1996) (stating "the trier of fact decides which evidence to accept and which to reject.... [I]t is the trier of fact that must draw the inferences reasonably deducible therefrom," therefore, "absent clear error in its factfinding, an appellate court is required, in deference to the trial court, to accept those findings of fact") (alteration added); *In re Timothy F.*, 343 Md. 371, 380, 681 A.2d 501, 505 (1996) (stating that "[i]n a criminal case, the appropriate inquiry is not whether the reviewing court believes that the evidence established guilt beyond a reasonable doubt, but rather, 'whether ... *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' ") (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573) (alteration added); *State v. Raines*, 326 Md. 582, 590, 606 A.2d 265, 269 (1992) (holding that, in a murder trial, intent may be inferred by the trier of fact and that such a "determination will not be disturbed on appeal unless clearly erroneous"); *McMillian v. State*, 325 Md. 272, 281–82, 600 A.2d 430, 435 (1992) (stating that a "trial court's findings as to disputed facts are accepted by this Court unless found to be clearly erroneous after having given due regard to the lower court's opportunity to assess the credibility of the witnesses"); *see also Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239, 1240–41 (1990), *overruled in part on other grounds, Wengert v. State*, 364 Md. 76, 89 n. 4, 771 A.2d 389, 396 n. 4 (2001).

## III. Discussion

 Respondent was convicted of possession of contraband, including heroin, cocaine and drug paraphernalia, as defined in Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27 § 277(s).[5] Article 27 § 277(s) defines "Possession" to "mean

---

5. What was formerly Article 27 § 277(s) has been recodified into Md.Code (2002), § 5–101(u) of the Criminal Law Article, which states,

the exercise of actual or constructive dominion or control over a thing by one or more persons." In regard to the elements of the crime of possession, this Court has said:

> "[t]o prove control, the " 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or direct influence over it.' " *McDonald*, 347 Md. [452,] 474, 701 A.2d [675,] 685 [(1997)] (alterations in original) (quoting *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872, 874 (1983) (quoting *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767, 777 (1974))); *see Taylor v. State*, 346 Md. 452, 457–58, 697 A.2d 462, 465 (1997). Moreover, Judge Eldridge, writing for the Court in *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988), concluded that 'an individual would not be deemed to exercise "dominion or control" over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control.' *Dawkins*, 313 Md. at 649, 547 A.2d at 1046."

*White v. State*, 363 Md. 150, 163, 767 A.2d 855, 862 (2001) (alterations added) (footnote omitted); *see also Taylor v. State*, 346 Md. 452, 458–60, 697 A.2d 462, 465–66 (1997). An individual's knowledge of the contraband is a key element in finding that individual guilty of possessing it and that knowledge may be proven by inferences from the totality of the evidence, circumstantial or direct, presented to the trier of fact. *Moye v. State*, 369 Md. 2, 14, 796 A.2d 821, 828 (2002). It has long been established that the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband. *Henson v. State*, 236 Md. 518, 524–25, 204 A.2d 516, 520 (1964), *overruled in*

---

" 'Possess' means to exercise actual or constructive dominion or control over a thing by one or more persons." Respondent was charged pursuant to the law as it existed prior to Article 27's recodification.

*part on other grounds, State v. Lee,* 374 Md. 275, 289 n. 9, 821 A.2d 922, 930 n. 9 (2003).

The State contends that, when evaluating the evidence in the case *sub judice* in the light most favorable to it, "the evidence and the inferences drawn therefrom support a finding that [respondent] knew of the presence of drugs and drug paraphernalia" (alteration added). The State argues that both circumstantial and direct evidence support such a finding. In essence, the State argues that the jury was able to infer knowledge of the drugs because respondent was a passenger in the stolen Explorer during the police chase and subsequent crash and the "nature and sheer quantity of the drug paraphernalia" allowed the jury to infer knowledge, and thus constructive possession, of the contraband.

Respondent argues that the evidence was insufficient to sustain respondent's conviction for possession of contraband because "[t]he evidence in this case establishes nothing more than [respondent's] presence as a passenger in a vehicle in which drugs and paraphernalia were found" (alterations added). Respondent contends that the jury could have done nothing but speculate as to whether he knew of the drugs in the car due to the lack of testimony regarding respondent's location in the car, the location of the contraband prior to the crash and the circumstances surrounding the drug paraphernalia's suspected use, *i.e.,* when, where and by whom. We disagree. The jurors logically could have found that the items were located in the open passenger compartment or open cargo area before the crash. Respondent relies on several of this Court's cases dealing with sufficiency of the evidence in a criminal trial involving possession of contraband. These cases, however, are distinguishable from the case *sub judice.*

In *Moye v. State, supra,* this Court held the evidence to be insufficient to sustain a conviction for the possession of a controlled dangerous substance (CDS). In *Moye,* the police responded to a call that a "cutting," *i.e.,* a battery committed by striking another with a knife, was occurring at a private residence in Prince George's County. The home was occupied

by the couple leasing the home, the Bullocks, a man renting the basement, Greg Benson, and the defendant, Moye. Moye was the brother of Mrs. Bullock and had no ownership or lease interest in the basement apartment. Shortly after the arrival of the police, the Bullocks and Mr. Benson exited the house while Moye remained inside. The police observed Moye moving about the first floor of the house through several of the windows. After a police announcement requesting that Moye exit the house under the threat of police entry with a K–9 unit, Moye was seen looking through a basement window. After several minutes, Moye left the house through a door leading out of the basement area rented exclusively by Mr. Benson. After arresting Moye, the police entered the basement and discovered three opened or partially opened drawers, which contained several small bags of marijuana, a digital scale with white residue and a dinner plate with a razor blade and white residue on it. Another bag of marijuana and a bag of crack cocaine were found hidden in the ceiling. Moye was convicted of possession of CDS and possession of drug paraphernalia.

In finding this evidence to be insufficient to sustain Moye's convictions, this Court said:

"[W]e are left with nothing but speculation as to Moye's knowledge or exercise of dominion or control over the drugs and paraphernalia found in the Bullocks's basement. Similar to the defendant in *Taylor*, Moye did not have any ownership or possessory right in the premises where the drugs and paraphernalia were found. Joseph Bullock testified at trial that he and his wife, Yolanda, leased their home and that the couple rented out the basement to Greg Benson, who had been residing there for several months prior to March 6, 2000. He further testified that at the time of the incident, Moye was 'living' in the house with him and his wife. No evidence was adduced at trial as to how long Moye had been staying at the Bullocks's home. On this record, therefore, we cannot conclude that Moye had any ownership or possessory right to or in the Bullocks's home.

. . .

"The State also failed to produce any evidence concerning Moye's presence in the basement *in the vicinity of the drugs.* Although Moye suffered a cut on his finger which required hospital treatment, the police found no blood in the basement. In addition, the knife used in the cutting incident, to which the police had responded, was found upstairs in the main portion of the house, rather than in the basement. Because the record does not adequately disclose the duration of Moye's visit to the basement, it is impossible to tell if, during the time he traveled into the basement from the first floor of the home prior to exiting through the basement door, he had, in fact, stood over the drawers in the counter and had the 'plain view' vantage point urged by the State.

"Further, there were no facts established at trial as to *whether Moye was present in the room with the drugs for any given amount of time* other than to say that he left the Bullocks's home through the basement door. The State offered no evidence to suggest any relationship between Benson and Moye which would have established that Moye frequented the basement of the Bullocks's home or that he was aware of what items were stored in the drawers of the counter area. Thus, we are confronted with a situation where a person has been convicted of possessing controlled dangerous substances and yet we cannot gauge whether he even knew the contraband was in the basement and controlled or exercised dominion over the CDS.

. . .

"In sum, the circumstantial evidence presented by the State in this case fails to establish the requisite knowledge and exercise of dominion or control over the CDS and paraphernalia for which Moye was convicted."

*Moye*, 369 Md. at 17–24, 796 A.2d at 830–34 (footnote omitted) (emphasis added).

The facts in *Moye* are readily distinguishable from the case *sub judice.* In *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981), the United States Supreme Court upheld a search of the entire passenger compartment of a vehicle incident to the arrest of a person inside the vehicle because items within the "relatively narrow compass of the passenger compartment of an automobile" are easily accessible to an occupant of the vehicle. In *Moye,* Moye was seen in several locations inside a home other than where the contraband was found. Moye had no legal interest in the basement apartment being rented by another man where the drugs were situated in a partially opened drawer. Respondent, unlike Moye, was not in a large house with several rooms, one of which contained partially hidden contraband; he was inside the passenger compartment of a vehicle with three others, in a relatively close space where contraband was found strewn throughout the inside compartment of the vehicle. The jurors could have made the inference due to the quantity of the contraband and the nature of the vehicle, that the contraband was contained in the open area of the vehicle prior to the crash.

Additionally, while certain photographs taken depict that the contraband was in plain view inside the basement in the *Moye* case, other photograph angles concealed the contraband from view. We specifically recognized this by stating that "an additional photograph taken within a few feet from the counter area reflects only the plate in the left hand drawer, and a box of kitchen bags in the right drawer." *Moye,* 369 Md. at 19, 796 A.2d at 831. By contrast, in the case *sub judice,* respondent was a passenger in a vehicle where a large amount of contraband was found *scattered throughout* the vehicle. As we shall discuss more completely, *infra,* the jury, using its own experience and common sense, could reasonably infer that it was inconceivable, given the quantity of contraband found inside the vehicle, that all of the contraband was concealed from respondent's view before the vehicle flipped over three times.

In *White v. State, supra,* Maryland State Troopers stopped two vehicles they observed to be traveling in "a procession" with three other vehicles because the vehicles were following each other too closely. During the questioning of one of the drivers, a trooper noticed that White, a passenger in one of the vehicles, was not wearing a seatbelt and requested to see his driver's license. The trooper also requested that the driver exit the vehicle after smelling a strong odor being emitted from the vehicle (due to the 72 pine-scented air fresheners located therein), the giving of inconsistent statements and observing other suspicious behavior by the occupants. The driver consented to a pat down search and a bag of marijuana was recovered on the driver's person. The trooper's subsequent search of the vehicle revealed 194 grams of cocaine inside a sealed box of pots and pans in the vehicle's trunk. White and the driver were both charged with several charges stemming from the possession of cocaine.

In finding the evidence insufficient to sustain White's convictions relating to the possession of cocaine, we stated:

"There is a substantial question whether the evidence in this case establishes beyond a reasonable doubt that [White] had knowledge of the presence of the cocaine *hidden in a sealed box of pots and pans found inside the trunk of Charity's [the driver] vehicle.* Although [White], by virtue of being a passenger in Charity's vehicle, was in close proximity to the cocaine, on this record he did not have a possessory right in, or control over, the vehicle. . . .

. . .

"After reviewing the record in White's case in a light most favorable to the State, we hold the circumstantial evidence upon which the State's case rested was insufficient as a matter of law to support, beyond a reasonable doubt, that [White] exercised dominion or control over the cocaine found inside the pots and pans box in the trunk of Charity's automobile. If the rational fact finder was not permitted to infer reasonably in *Leach* that Stephen exercised dominion and control over the PCP found in a closed container on a

bedroom dresser in an apartment to which he had ready access, *then a rational fact finder may not infer in the present case that [White] had dominion and control over the cocaine found in a sealed box in the trunk of a vehicle* in which he apparently had limited access and no possessory interest."

*White,* 363 Md. at 164–67, 767 A.2d at 863–64 (alterations added) (emphasis added). *White* too is readily distinguishable from the case at bar. White, like respondent in the case *sub judice,* had no possessory interest in the vehicle being searched for drugs, nor was drug evidence recovered on his person. Unlike the case *sub judice,* however, the drugs in *White* were in a box sealed inside another box of pots and pans, which were located inside a locked trunk of a car being driven by another person. There was nothing to indicate that White had any relation, or even access, to the locked trunk and sealed container hiding the drugs. The cocaine was not in plain view, nor was it readily accessible to the vehicle's passenger. The contraband was sealed in a container located in a different compartment of the vehicle; it was *not accessible* from the interior compartment. In the case *sub judice,* respondent was a passenger in a vehicle where, at the time the police were able to approach the vehicle, drugs were strewn throughout the inside compartment, not in a sealed box in a locked trunk. While passengers may have little, if any, access to items that are sealed in a container and locked inside a trunk, they have much greater access to items found strewn throughout the passenger compartment of a vehicle.

In *Taylor v. State, supra,* this Court reversed a conviction for possession of marijuana because the evidence was insufficient to support such a conviction. Taylor and four friends rented a room in a motel in Ocean City, Maryland. Officers went to the motel in response to a complaint about a possible CDS violation. The manager directed the officers to Taylor's room and, upon arrival outside the room, the officers smelled marijuana. An occupant, Myers, told the officers that no marijuana was being smoked and then consented to a search. When entering the room occupied by Taylor, the officers

observed Taylor lying down with his head turned away from the door. There was smoke in the room. The officers asked Myers if there was any marijuana in the room and Myers took a carrying bag, opened it and gave a bag of marijuana to the officers. Myers stated that it was his marijuana. Myers also told the officers of more marijuana in another bag not belonging to Taylor. Taylor said that other friends not staying in the room had smoked marijuana earlier, but that they had left. Although the officers smelled the odor of marijuana, they did not observe anyone smoking it, the ashtrays were clean and there was no visible marijuana in the room.

We held that the evidence was insufficient to sustain a convicted for possession of marijuana against Taylor when we stated:

"We agree with Taylor that, under the facts of this case, any finding that he was in possession of the marijuana could be based on no more than speculation or conjecture. The State conceded at trial that no marijuana or paraphernalia was found on [Taylor] or in his personal belongings, nor did the officers observe [Taylor] or any of the other occupants of the hotel room smoking marijuana. Viewing the evidence in the light most favorable to the State, Officer Bernal's testimony established only that Taylor was present in a room where marijuana had been smoked recently, that he was aware that it had been smoked, and that Taylor was in proximity to contraband that was concealed in a container belonging to another.

"The record is clear that [Taylor] was not in exclusive possession of the premises, and *that the contraband was secreted in a hidden place not otherwise shown to be within [Taylor]'s control.* Accordingly, a rational inference cannot be drawn that he possessed the controlled dangerous substance. . . .

. . .

". . . [W]ithout knowledge of the presence of marijuana in the room, it is not possible for [Taylor] to have exercised

dominion or control over the marijuana, another required ingredient of the crime of possession. The facts and circumstances, considered in the light most favorable to the State, do not justify any reasonable inference that [Taylor] had the ability to exercise, or in fact did exercise dominion or control over the contraband found in the room. Although the evidence in this case might form the basis for a strong suspicion of [Taylor]'s guilt, suspicion is insufficient to support a conviction. . . .

. . .

"In sum, the evidence presented in this case was insufficient to establish that Taylor was in possession of the marijuana seized from Myers's carrying bags. Taylor's presence in a room in which marijuana had been smoked, and his awareness that marijuana had been smoked, cannot permit a rational trier of fact to infer that Taylor exercised a restraining or directing influence over marijuana that *was concealed in personal carrying bags of another occupant of the room.* Because [Taylor] was in joint rather than exclusive possession of the hotel room, his mere proximity to the contraband found concealed in a travel bag and his presence in a room containing marijuana smoke were insufficient to convict him."

*Taylor,* 346 Md. at 459–63, 697 A.2d at 465–68 (alterations added) (emphasis added). *Taylor* is distinguishable from the case *sub judice* for reasons similar to the reasons distinguishing the case *sub judice* from *White.* The drugs in *Taylor* were found in concealed bags that were personal to their owner—someone *other* than Taylor. Although Taylor was in the room where the drugs were found, he rented the room with four others, did not have access to the closed bags containing the drugs and the drugs were specifically attributed to another. In contrast, at the time of arrest in the case *sub judice,* the large amount of contraband was scattered throughout the inside compartment of the Explorer in which respondent was a passenger. No evidence singling out another passenger existed and all denied ownership of it. An

inference thus could be made that all of the Explorer's occupants had equal access to the contraband. While the trier of fact in *Taylor* had to speculate whether Taylor had control over drugs located in a closed personal carrying bag of another in a hotel room, the jury in this case could have reasonably believed that respondent knew of the large quantity of contraband that was found in strewn about the interior of the Explorer due to the quantity and nature of the contraband.

Respondent relies, in part, on several of this Court's cases involving probable cause to search a car passenger, including the case of *Pringle v. State, supra.* In *Pringle,* this Court held that "the mere finding of cocaine in the back armrest when petitioner was a front seat passenger in a car being driven by its owner is insufficient to establish probable cause for an arrest for possession." *Pringle,* 370 Md. at 545, 805 A.2d at 1027. Several days after the oral argument in the case *sub judice* took place, the United States Supreme Court, in a unanimous opinion, overruled our holding in *Pringle.* The Supreme Court stated:

"Pringle was one of three men riding in a Nissan Maxima at 3:16 a.m. There was $763 of rolled-up cash in the glove compartment directly in front of Pringle. Five plastic glassine baggies of cocaine were behind the back-seat armrest and accessible to all three men. Upon questioning, the three men failed to offer any information with respect to the ownership of the cocaine or the money.

*"We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine.* Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

"Pringle's attempt to characterize this case as a guilt-by-association case is unavailing. His reliance on *Ybarra v. Illinois*[, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)] ... and *United States v. Di Re*[, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948)] ... is misplaced....

"This case is quite different from *Ybarra*. Pringle and his two companions were in a relatively small automobile, not a public tavern. In *Wyoming v. Houghton*[, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)] . . . we noted that 'a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.' Here we think it was reasonable for the officer to infer a common enterprise among the three men. *The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.*

"In *Di Re*, a federal investigator had been told by an informant, Reed, that he was to receive counterfeit gasoline ration coupons from a certain Buttitta at a particular place. The investigator went to the appointed place and saw Reed, the sole occupant of the rear seat of the car, holding gasoline ration coupons. There were two other occupants in the car: Buttitta in the driver's seat and Di Re in the front passenger's seat. Reed informed the investigator that Buttitta had given him counterfeit coupons. Thereupon, all three men were arrested and searched. After noting that the officers had no information implicating Di Re and no information pointing to Di Re's possession of coupons, unless presence in the car warranted that inference, we concluded that the officer lacked probable cause to believe that Di Re was involved in the crime. *We said '[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person.'* No such singling out occurred in this case; none of the three men provided information with respect to the ownership of the cocaine or money.

"We hold that the officer had probable cause to believe that Pringle had committed the crime of possession of a controlled substance."

*Maryland v. Pringle,* 540 U.S. ——, ——, 124 S.Ct. 795, 800–02, 157 L.Ed.2d 769, 776–77 (2003) (citations omitted) (footnote omitted) (emphasis added).

While the *Pringle* case dealt with the lower threshold standard of probable cause and not the greater burden applicable to the sufficiency of the evidence standard, the Supreme Court's holding is relevant to the case at bar. The Supreme Court clearly noted that car occupants are likely to be involved in a common enterprise. Furthermore, that court specifically stated that it thought "it an entirely reasonable inference from these facts [in *Pringle* ] that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Id.* at ——, 124 S.Ct. at 800, 157 L.Ed.2d at 776 (alteration added). The Court went on to say that "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id.* at ——, 124 S.Ct. at 801, 157 L.Ed.2d at 777 (alteration added). The facts here support these notions even more than in *Pringle.* Here, the drugs were found strewn throughout the vehicle, not concealed behind an armrest in the backseat. Additionally, the Explorer was stolen, the occupants fled from police and money was recovered directly from respondent's person, not from the closed glove compartment. Not only could the jury infer that the driver would be unlikely to admit an innocent passenger into a stolen vehicle containing a large quantity of contraband, but it could infer respondent's relation to the drugs from direct evidence found on respondent's person. Nor was there in the present case any indication that the police had any information that any particular occupant possessed the contraband as in *Di Re.*

An examination of the cases illustrates that a rational jury could find beyond a reasonable doubt that respondent knew of the existence and illicit nature of the contraband found strewn throughout the Explorer. Respondent was a passenger in a stolen vehicle fleeing from the police. The police chase ended only after the vehicle had flipped over three times. Several

bags of drugs and drug paraphernalia were discovered inside the Explorer and evidence revealed that it was strewn and scattered throughout the vehicle at the time the police first approached it. Testimony revealed the other contraband, including the bags of drugs, syringes, residue, empty bags, bottles of liquid and bleach, large roll of aluminum foil, metal bottle caps, cotton swabs and others, are the type of paraphernalia commonly utilized in making and dispensing cocaine and heroin, the actual drugs found within the Explorer.

Respondent emphasizes that there is no evidence pointing to where the drugs were located before the crash and that this omission eliminates the possibility that a jury could find that respondent knew of the drugs before the crash. We disagree. If we were to accept that argument, a passenger in a vehicle that crashes resulting in drugs being scattered throughout the interior compartment of the automobile could never be convicted of possession of the scattered contraband. In that case, the jury would be stripped of its ability to use its common sense, logic and experience to make inferences such as one inferring that the sheer quantity, nature and bulkiness of contraband found strewn about a vehicle illustrate the improbability that all of the drugs could have been "hidden" from view by the vehicle's occupants.

The jurors, knowing the size and quantity of the items recovered and seeing the size of the Explorer,[6] could have reasonably concluded that the items were too bulky and/or numerous to be normally placed in a concealed area in that particular vehicle. There are no trunks in this type of vehicle and there was no evidence of any container or other method of concealing the contraband in the truck. As we have indicated, the jurors logically could have found that the items were located in the open passenger compartment or open cargo area before the crash.

---

**6.** The jurors saw the video of the police chase, which illustrated the actual size of the vehicle.

In addition, over two hundred dollars was found on respondent's person, which, given the large amount of drugs in the vehicle, could have been found by the jury to be additional evidence possibly suggesting a relationship to the drugs.[7] Respondent takes issue with such an inference because of the denominations of the bills found on his person. He argues that "the $220 was not in denominations suggestive of drug dealing." This, however, is the very type of inference to be left for the jury. The money, direct evidence found on respondent's person, and the quantity of the drugs and paraphernalia found in the Explorer supports an inference that respondent was involved with the drugs.[8] From all of the

---

7. The State argues that:
 "the presence of numerous items used for actually injecting or consuming drugs, as well as items useful for cleaning needles between uses, suggesting drugs had already been consumed, supports the jury's reasonable inference that [respondent] was participating with the other occupants of the vehicle in the mutual enjoyment of the contraband recovered from the vehicle. Here, the presence of heating devices with residue and baggies containing only residue served as further evidence of use. This evidence permitted an inference that [respondent] and the other occupants of the car had consumed the drugs."
 This argument relies on the common enterprise theory to impute knowledge and control of the contraband to respondent. Respondent argues that no evidence suggests recent use of the drugs, as there was no smoke in the vehicle, the pipe found was not warm and there were no needle marks on respondent. Respondent contends that like *Taylor,* such omissions prevent an inference of mutual enjoyment.
 Respondent did not have to be using the contraband with the others to create an inference of knowledge and control that he was involved with possessing or controlling the contraband. If the jury also made an inference of respondent's knowledge and control over the contraband from a connection of his money to the drugs, the inference is also reasonable.

8. This is not to mean that every time an individual has $220 in his pocket that he could be convicted of a crime relating to drugs. Under the totality of the specific facts in the case *sub judice,* where respondent was located in a stolen vehicle fleeing from police with numerous items of contraband strewn throughout it, an inference that the money is connected with the drugs is permissible.
 In the probable cause context of *Pringle, supra,* the Untied States Supreme Court noted:
 "The Court of Appeals of Maryland dismissed the $763 seized from the glove compartment as a factor in the probable-cause determina-

evidence, the jury could have believed beyond a reasonable doubt that respondent not only knew of the contraband in the Explorer, but exercised dominion and control over it.

These inferences are the very type of inferences that juries are charged with making—to make findings of fact based on the evidentiary facts and their common sense reasoning. This Court noted that "[t]here is nothing mysterious about the use of inferences in the fact-finding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts." *Robinson v. State,* 315 Md. 309, 318, 554 A.2d 395, 399 (1989) (alteration added). *See also Lowry v. State,* 363 Md. 357, 374, 768 A.2d 688, 697 (2001) (stating in a missing evidence case, " '[a]n evidentiary inference, such as a missing evidence or missing witness inference ... is not based on a legal standard but on the individual facts from which inferences can be drawn and, in many instances, several inferences may be made from the same set of facts ....' ") (alteration added) (quoting *Patterson v. State,* 356 Md. 677, 685, 741 A.2d 1119, 1123 (1999)). The inferences made in this case fit within the purview of juror application of "common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts." *Robinson,* 315 Md. at 318, 554 A.2d at 399.

## IV. Conclusion

The trial fact finder is the final arbiter of the facts. In a jury trial, the members of the jury are charged with the duty of resolving factual disputes when they arise at trial and they must use their own common sense and backgrounds to make reasonable inferences from facts presented to reach an out-

---

tion, stating that '[m]oney, without more, is innocuous.' The court's consideration of the money in isolation, rather than as a factor in the totality of the circumstances, is mistaken in light of our precedents...."

*Pringle,* 540 U.S. at —— n. 2, 124 S.Ct. at 800 n. 2, 157 L.Ed.2d at 776 n. 2 (citation omitted). The Court of Special Appeals in the present case did not have the benefit of the United States Supreme Court's *Pringle* decision.

come. Where it is reasonable for a trier of fact to make an inference, we must let them do so, as the question "is not whether the [trier of fact] could have made other inferences from the evidence or even refused to draw any inference, but whether the inference [it] did make was supported by the evidence." *Smith,* 374 Md. at 557, 823 A.2d at 682 (alterations added).

The judgment of the intermediate appellate court is reversed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

Dissenting Opinion by ELDRIDGE, J., which BELL, C.J., joins.

I disagree with the majority's decision that the evidence was sufficient to convict the respondent, a passenger in the motor vehicle, of possessing the heroin, cocaine, and drug paraphernalia found in the vehicle. When the actual facts of this case are objectively examined, the majority's decision amounts to a holding that the mere presence of contraband anyplace in a motor vehicle is sufficient to convict any passenger of knowingly possessing such contraband. This is contrary to our prior cases and, more importantly, violates the federal and state constitutions. Instead, I fully concur with Judge Greene's holding for the Court of Special Appeals

"that the mere presence in a vehicle of drugs and paraphernalia, without more, is insufficient to establish a nexus between the passenger, the drugs, and the paraphernalia. Here, the evidence was not sufficient to permit a reasonable inference that appellant knew that the drugs and paraphernalia were in the vehicle or that appellant exercised any dominion or control over the drugs and paraphernalia."

The majority's decision that sufficient evidence supported the respondent's convictions for knowingly possessing contraband is based upon an erroneous factual inference constructed by the majority. The majority finds that the jury "could reasonably infer that it was inconceivable, given the quantity of contraband found inside the vehicle, that all of the contraband was concealed from respondent's view before the vehicle flipped over three times." (Opinion at 436). The majority points to no actual evidence at the trial which would support this inference. Instead, the majority states that such an inference would be based on the jury's "own experience and common sense." (*Ibid.*). A reasonable person's "experience and common sense" would be to the contrary.

The vehicle involved, a Ford Explorer, is a very large sports utility vehicle. It is common knowledge that such vehicles have numerous compartments in the "passenger" area.[1] Many of these compartments have covers or are structured so that the contents are not readily visible to passengers.[2] The Ford Explorer in this case *rolled over three times!* It is entirely conceivable, and in fact it is likely, that all of the contraband was in various compartments and fell out of the compartments when the vehicle rolled over three times. A Ford Explorer is a very large, heavy, motor vehicle; it is classified as a truck. When such a vehicle rolls over three times, covers of compartments are likely to come open, and the contents of the compartments will obviously become "*scattered throughout* the vehicle." (*Ibid.*). Moreover, based upon the facts in dozens of cases which have come before this

---

1. The majority's opinion refers to "the passenger compartment" of the Ford Explorer. (Opinion at 436). Of course, there is no "trunk" in a vehicle such as this. The entire inside of the vehicle constitutes one large continuous area, divided only by the seats.

2. Although I have never owned a Ford Explorer, I am familiar with one which is owned by a former law clerk of mine. This Ford Explorer has fourteen separate compartments inside of the vehicle, eight of which have covers. Some of the covers will pop open when the vehicle goes over a small bump. Some of the remaining six compartments are structured so that a passenger would not easily see the contents unless the passenger was searching the compartments.

Court, controlled dangerous substances carried in motor vehicles are usually concealed in compartments or otherwise hidden. They are not in the passengers' "view." (*Id.* at 436). The inference drawn by the majority is directly contrary to "experience and common sense." (*Ibid.*)

The majority repeatedly relies on the fact that, after the vehicle rolled over three times, the contraband "was found strewn throughout the inside compartment of the vehicle" or "*scattered throughout* the vehicle" or "found strewn throughout the passenger compartment," etc. (*Id.* at 436, 438, 440, 443, 444). There is utterly no evidence, however, concerning the location of the contraband before the Ford Explorer rolled over three times. Common sense and experience, upon which the majority purports to rely, teaches that it is more likely than not that the contraband was concealed prior to the vehicle rolling over three times. The majority's contrary finding is simply irrational.

The majority opinion also states that the United States "Supreme Court's holding" in *Maryland v. Pringle*, 540 U.S. ——, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), "is relevant to the case at bar." (Opinion at 443). In my view, the *Pringle* opinion has little or no relevance. The issue in *Pringle* was whether, under the Fourth Amendment to the United States Constitution, there was probable cause to arrest a front-seat passenger in an automobile when cocaine was hidden behind the back-seat armrest and $763.00 of rolled-up cash was in the glove compartment directly in front of the passenger. A majority of this Court, in an excellent and thorough opinion by Judge Cathell for the Court, held that there was no probable cause to arrest the passenger. *Pringle v. State*, 370 Md. 525, 805 A.2d 1016 (2002). The United States Supreme Court disagreed, holding that "Pringle's arrest ... did not contravene the Fourth and Fourteenth Amendments." *Maryland v. Pringle, supra*, 540 U.S. at ——, 124 S.Ct. at 802, 157 L.Ed.2d at 777.[3] The Supreme Court in *Pringle* emphasized the

---

**3.** The issue before this Court in *Pringle* concerned the Fourth and Fourteenth Amendments, and we are, of course, bound by the United

difference between the Fourth Amendment's "probable-cause standard" and "the *quanta* ... of proof appropriate in ordinary judicial proceedings...." 540 U.S. at ——, 124 S.Ct. at 800, 157 L.Ed.2d at 775 (some internal quotation marks omitted). The Court also relied upon, *inter alia,* the fact that "Pringle and his two companions were in a relatively small automobile" and the fact that there was a large quantity of "cash in the car." 540 U.S. at ——, 124 S.Ct. at 801, 157 L.Ed.2d at 776–77.

Instead of involving the Fourth Amendment's "probable cause" standard, the present case involves the sufficiency of the evidence to sustain a criminal conviction. This case presents issues under the Due Process Clause of the Fourteenth Amendment and, independently, under Articles 23 and 24 of the Maryland Declaration of Rights.[4] Under the Fourteenth Amendment's Due Process Clause and the principles set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781,

---

States Supreme Court's holding under the federal constitution. No issue under Article 26 of the Maryland Declaration of Rights was raised in *Pringle.* If, in the future, an issue under Article 26 is presented under a similar fact situation, this Court would not be bound by the Supreme Court's decision in *Pringle.* As Judge Marvin Smith stated for this Court in a case involving Article 26, *Gahan v. State,* 290 Md. 310, 322, 430 A.2d 49, 55 (1981),

"although a clause of the United States Constitution and one in our Declaration of Rights may be 'in pari materia,' and thus 'decisions applying one provision are persuasive authority in cases involving the other, we reiterate that each provision is independent, and a violation of one is not necessarily a violation of the other.' "

*See also Dua v. Comcast Cable,* 370 Md. 604, 621, 805 A.2d 1061, 1071 (2002) ("[W]e have ... emphasized that, simply because a Maryland constitutional provision is in *pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart.")

4. Article 24 of the Declaration of Rights provides as follows:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

Article 23 of the Declaration of Rights, *inter alia,* provides for "the Court ... [to] pass upon the sufficiency of the evidence to sustain a conviction."

61 L.Ed.2d 560 (1979), the evidence was insufficient to sustain the respondent's convictions for possession of heroin, cocaine, and drug paraphernalia.

Moreover, quite apart from any decision under the federal constitution, I would hold, under Articles 23 and 24 of the Maryland Declaration of Rights and this Court's prior cases, that the evidence was clearly insufficient to sustain the convictions for possession of controlled dangerous substances and drug paraphernalia. Thus, in *White v. State,* 363 Md. 150, 767 A.2d 855 (2001), this Court unanimously held that the presence of controlled dangerous substances and drug paraphernalia in the trunk compartment of a motor vehicle was insufficient to convict a passenger in the vehicle of possession. In the case at bar, prior to the vehicle rolling over three times, the controlled dangerous substances and the paraphernalia may well have been in one or more of the Ford Explorer's covered compartments. I fail to perceive any meaningful distinction between the trunk of an automobile and a covered compartment in a sports utility vehicle. Consequently, the majority's decision in the present case cannot be reconciled with the decision in *White. See also, e.g., State v. Smith,* 374 Md. 527, 550–551, 823 A.2d 664, 677–678 (2003) ("[T]he knowledge of the contents of the vehicle can be imputed to the driver of the vehicle" but not a passenger, because "owners/drivers and passengers of vehicles are to be treated differently"); *Moye v. State,* 369 Md. 2, 5, 796 A.2d 821, 822 (2002) (The defendant may *not* be found guilty of possessing controlled dangerous substances and drug paraphernalia "by virtue of having been staying in a house and having been present in the dwelling's basement in which drugs were located inside drawers which were open or partially open"); *Taylor v. State,* 346 Md. 452, 459, 697 A.2d 462, 465–466 (1997) (Evidence "that Taylor was present in a room where marijuana had been smoked recently, that he was aware that it had been smoked, and that Taylor was in proximity to contraband that was concealed in a container belonging to another * * * does not support a rational inference that [Taylor] had possessed the marijuana" as "[p]ossession requires more than being in the presence of

other persons having possession; it requires the exercise of dominion or control over the thing allegedly possessed"); *Livingston v. State*, 317 Md. 408, 415–416, 564 A.2d 414, 418 (1989) ("Merely sitting in the backseat of the vehicle, Livingston did not demonstrate ... that he possessed any knowledge of, and hence, any restraining or directing influence over ... marijuana seeds located on the floor in the front of the car"); *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041, 1047 (1988) ("The accused, in order to be found guilty [of possessing a controlled dangerous substance], must know of both the presence and the general character or illicit nature of the substance"); *State v. Leach*, 296 Md. 591, 463 A.2d 872 (1983); *Garrison v. State*, 272 Md. 123, 321 A.2d 767 (1974).

As earlier stated, the majority's decision in the case at bar amounts to a holding that the mere presence of contraband in a motor vehicle is sufficient to convict any passenger of knowingly possessing that contraband. In light of today's decision, no one should get in someone else's motor vehicle without searching it—thoroughly. And, to be on the safe side, the searcher should probably use a drug-sniffing canine.

Chief Judge BELL joins this dissenting opinion.